UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mercury Public Affairs LLC,

                                                 Plaintiff,

        v.                                                                           COMPLAINT
                                                                                     Civil Action, File No.
Airbus Defence and Space, S.A.U., f/k/a Airbus Military and
Airbus Defense and Space, Inc.,

                                                 Defendants.

        Plaintiff, by its attorneys Lippes Mathias Wexler Friedman, LLP, for its Complaint against

Defendant respectfully shows to the Court and alleges as follows:

## NATURE OF THE ACTION

        1.      This is a diversity action involving breach of contract and account stated for the

provision of consulting services by Plaintiff to Defendants.

## PARTIES

        2.      Plaintiff is a Delaware limited liability company authorized to do business in New

York with a principal place of business located in New York County.

        3.      On information and belief, Defendant Airbus Defence and Space, S.A.U, f/k/a

Airbus Military is a foreign corporation with its principal place of business operations in Madrid,

Spain.

        4.      On information and belief, Defendant Airbus Defense & Space, Inc., is a Delaware

corporation that has a principal place of business operations in Arlington, Virginia.

1948633

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 USC § 1332 because the claim is between citizens of different states and involves an amount in controversy in excess of $75,000.00 exclusive of interest and costs.

6.      Venue is proper in the Southern District of New York pursuant to 28 USC § 1391 as it is the judicial district in which a substantial part of the events giving rise to the claim occurred.

## FACTS

7.      Plaintiff is in the business of providing individuals and businesses with, among other things, government and foreign affairs consulting services.

8.      On information and belief, Defendants are inter-related global corporations that represent the defense and aerospace product and service division of the multi-national aerospace corporation known generally as "Airbus."

9.      In order to grow and strengthen Defendants product reach, and to help it navigate certain foreign affairs issues, on or about 2013 Defendants hired Plaintiff under what was initially a verbal agreement to represent Defendants' interests in their potential foreign military sales campaign (hereinafter "the Agreement").

10.     More specifically, at Defendants' specific insistence and request, one of Plaintiff's tasks under the Agreement was to use Plaintiff's knowledge and experience to work through the proper channels for Defendants to sell their Airbus Transport and Mission Aircraft to the United Nations.

11.     Similarly, Defendants also requested that Plaintiff use its knowledge and experience to work through the proper channels for Defendants to sell their Airbus Transport and Mission Aircraft to certain African nations.

1948633

12.     The parties agreed that Plaintiff would be compensated for its services at the rate of $10,125.00 per month.

13.     Following the Agreement, Plaintiff proceeded to dedicate substantial resources and time in late 2013 and through August of 2014 to meet and confer with government officials in the United Nations and abroad in an attempt to bring about Defendants' goal of selling its military aircraft product.

14.     A substantial amount of the meetings that Plaintiff set up and participated in took place in the United Nations headquarters in New York City.

15.     In addition, Plaintiff performed a significant portion of the "behind the scenes" support work that was necessary in bringing about the various meetings out of their headquarters in New York City.

16.     Although the parties began their relationship on a verbal contract, during the time period in which Plaintiff was performing services for Defendants, the parties were working together to finalize a written contract to memorialize the terms of the Agreement.

17.     Defendants insisted on drafting the written contract, so Plaintiff checked in weekly over the course of the Spring of 2014 to determine the status, and Defendants assured Plaintiff that they were preparing it and would forward once completed.

18.     On or about June 2014, after Plaintiff had done a substantial amount of work under the Agreement, Defendants forwarded a written contract which memorialized the terms of their verbal arrangement made at the outset of the parties' business relationship ("hereinafter the Contract"). A copy of this written contract is attached hereto as **Exhibit 1**.

19.    Under "Annex 1," to the Contract Plaintiff's task was defined as a service provider in support of Defendants' "initiatives regarding potential foreign military sales of the Airbus Transport and Mission Aircraft."

20.    Under "Annex 2," to the Contract, Defendants agreed to compensate Plaintiff for its services at the agreed rate of $10,125.00 per month.

21.    On or about June 9, 2014, one of Plaintiff's partners executed the Contract and it was returned to Defendants to be counter-signed.

22.    For reasons that remain unknown to Plaintiff, Defendants failed to counter-sign the Contract.

23.    On or about August 2014, having not received the counter-signed Contract despite multiple requests, and having received $0.00 in payments towards the services it had rendered, Plaintiff ceased doing any further work for Defendants.

24.    In the months following August 2014 when Plaintiff ceased work, the parties continued to have regular conversations regarding the Contract and, more specifically, payment for Plaintiff's services under the Agreement.

25.    At all times during these conversations, Defendants were promising payment to Plaintiff but indicated that it first needed to complete what it called an internal "due diligence" review of all of its various vendors.

26.    At no point in time did Defendants object to Plaintiff's services or the invoices Plaintiff rendered to Defendants for those services.

27.    In fact, on several occasions Defendants requested the invoices be sent to various places within their organization or modified to fit a particular format.

1948633

28.     On or about April 2015, again in reference to Plaintiff's ongoing efforts to collect payment, Defendants requested that Plaintiff execute a "Third Party Questionnaire" as part of its "due diligence" review process.  A copy of this completed Questionnaire is attached hereto as **Exhibit 2**.

29.     On or about November 19, 2015, Defendants, in a signed email, sent to Plaintiff a document proposing an amount they would agree to pay to Plaintiff - $171,533.23 - and requested that Plaintiff remit invoices to Defendants in those amounts.  A copy of this payment proposal is attached hereto as **Exhibit 3**.

30.     On or about December 5, 2015, Plaintiff accepted Defendants' proposal and sent invoices to Defendants for the services provided in 2013 and 2014, plus reimbursable expenses for a total amount due and owing Plaintiff of $171,533.23.  A copy of Plaintiff's invoices are attached hereto as **Exhibit 4**.

31.     When Defendants did not make payment to Plaintiff within a reasonable time following the submission of the invoices, Plaintiff began following up and was once again given the "run around" by Defendants.  Specifically, in emails from Defendants dated February 19, 2016, it was stated by Defendants that: "we are certainly progressing in getting clearance to settle pending payments," and "I do believe that we have solved most of the issues, but before giving the clearance HHR wants to interview you to complete the report (hopefully in the next few weeks)."  A copy of this email correspondence is attached hereto as **Exhibit 5**.

32.     Plaintiff continued to acquiesce to all of Defendants' requests and, despite continued assurances it would be paid, said payment never materialized.  On or about May 17, 2017, Plaintiff's CEO sent Airbus Group SE's CEO a letter regarding the unpaid invoices and

requested that he commit to making the payment. A copy of this letter is attached hereto as **Exhibit 6**.

33.    On or about July 25, 2017, Defendants sent a response letter to Plaintiff's letter of May 17, 2017. This letter indicated that Defendants considered the relationship with Plaintiff to be terminated and that no payment would be forthcoming. A copy of this termination letter is attached hereto as **Exhibit 7**.

34.    Defendants' letter identifies as its reasoning for the non-payment that Defendants "cannot continue any relationship with you, and cannot release payment to you, consistent with our policies, our procedures, and international norms." Defendants went on to say that "our ability to . . . pay you depended ultimately on our ability to reach a successful outcome of our supplemental and enhanced due diligence review of our relationship with you, which we have undertaken with the assistance of legal and forensic advisers."

35.    Critically, however, nothing in the letter provides any specific basis as to why Plaintiff did not pass Defendants' vague and completely undefined "due diligence" review or why said review would have anything to do with Plaintiff's performance under the Agreement and its entitlement to payment for said performance.

36.    In addition, as was the case throughout the entirety of Plaintiff's dealings with Defendants, not once did Defendants object to any of the services Plaintiff provided nor to the invoices Plaintiff rendered to Defendants.

37.    At all times Defendants accepted and were complimentary of the services Plaintiff provided.

38.    Consequently, Defendants are indebted to Plaintiff for the invoices amount of $171,533.23.

1948633

## AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

39.    Plaintiff repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

40.    The parties entered into a valid and enforceable contract whereby Plaintiff agreed to provide services to aid in Defendants' foreign military sales campaign and Defendants agreed to pay for those services at the rate of $10,125.00 per month plus reimbursement of expenses.

41.    Plaintiff fully and completely performed all of the services Defendants' requested under the parties' contract.

42.    Plaintiff rendered invoices to Defendants in accordance with the parties' contract setting forth the amounts owed to Plaintiff under the contract.

43.    Defendants' accepted Plaintiff's services and invoices without objection or dispute.

44.    Despite proper demand, Defendants' failed and refused to pay Plaintiff for any of the services it rendered on Defendants' behalf.

45.    As a result of said non-payment, Defendants have breached the contract with Plaintiff and are indebted to Plaintiff in the amount of $171,533.23 plus accrued statutory pre-judgment interest from August 1, 2014.

## AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF THE NOVEMBER 19, 2015 SETTLEMENT PROPOSAL

46.    Plaintiff repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

47.    On or about November 19, 2015, Defendants, in writing, made an offer to Plaintiff to settle any existing issues relating to the services Plaintiff had provided for Defendants in the amount of $171,533.23.

1948633

48.     Plaintiff accepted Defendants' offer by remitting the invoices Defendants requested in the amount of $171,533.23.

49.     Despite demand, Defendants have failed and refused to pay the amount accepted as due and owing by both parties of $171,533.23.

50.     Consequently, Defendants have breached the terms of the November 19, 2015 settlement agreement and are indebted to Plaintiff in the amount of $171,533.23.

## AS AND FOR A THIRD CAUSE OF ACTION FOR ACCOUNT STATED

51.     Plaintiff repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

52.     Plaintiff provided periodic invoices to Defendants concerning the amounts due under the Agreement.

53.     Defendant received said invoices and retained the same without objection for several years.

54.     An account for the provision of services has been stated between the parties.

55.     Defendants have failed to make payment due on the stated account.

56.     By reason of the foregoing, Defendant is indebted to Plaintiff in the sum of $171,533.23.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

57.     Plaintiff repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

58.     At Defendants insistence and request, Plaintiff provided good and valuable services to Defendants to aid in their foreign military sales campaign.

59.     The fair and reasonable value of the benefit conferred on Defendants was equal to $171,533.23.

1948633

60.     Despite demands, Defendants have failed to pay Plaintiff for the reasonable value of those services and have, as a result, been unjustly enriched in the amount of $171,533.23.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, on its causes of action for breach of contract, account stated and unjust enrichment, in the sum of One Hundred Seventy One Thousand Five Hundred Thirty Three and 23/100 Dollars ($171,533.23), together with pre-judgment statutory interest from the date of default and such other and further relief as to the Court may seem just and proper.

DATED:       August ____, 2019
             Albany, NY

                              Yours, etc.

                              LIPPES MATHIAS WEXLER FRIEDMAN LLP

                              By: _____
                                    Conor E. Brownell
                              Attorneys for Plaintiff
                              54 State Street, Suite 1001
                              Albany, NY 12207
                              (518) 462-0110
                              cbrownell@lippes.com

1948633

VERIFICATION

STATE OF NEW YORK
COUNTY OF *New York* ss..

*John Gallagher*, being duly sworn deposes and says:

1. That he/she is Authorized Representative of Mercury Public Affairs LLC, the company named in the within entitled action;

2. That he/she has read the foregoing Summons and Complaint and knows the contents thereof; and

3. That the same is true to his/her own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters he/she believes it to be true.

4. Deponent further says that the reason this verification is made by deponent is because the said Mercury Public Affairs, LLC is a limited liability company and the grounds of deponent's belief as to all matters in the said Complaint not stated upon his/her own knowledge, are investigations which deponent has caused to be made concerning the subject matter of this Complaint and information acquired by deponent in the course of his/her duties as an authorized representative of said limited liability company and from the books and papers of said company.

Sworn to before me this 8th
day of _August_, 2019.

Notary Public

CHAPIN D. FAY
Notary Public, State of New York
Registration #02FA6308341
Qualified In Nassau County
Commission Expires July 21, 2022

1948633