EXHIBIT 1

**Service Provider Agreement for Services Performed
Outside of the United States**

**Airbus Defense and Space, Inc.**

**And**

**Mercury Public Affairs, LLC hereafter referred to as Mercury or Service Provider**

**Airbus Defense and Space, Inc. Business Confidential**

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

## Table of Contents

Section 1.  Definitions ........................................................................................................ 3
Section 2.  Engagement ...................................................................................................... 6
Section 3.  Status ................................................................................................................ 7
Section 4.  Service Provider's Duties ................................................................................. 7
Section 5.  Remuneration .................................................................................................. 11
Section 6.  Term and Termination of the Engagement ...................................................... 12
Section 7.  Liability ............................................................................................................. 14
Section 8.  Confidentiality .................................................................................................. 14
Section 9.  Intellectual Property ........................................................................................ 15
Section 10. Correspondence and Notices .......................................................................... 16
Section 11. Miscellaneous .................................................................................................. 17
Section 12. Applicable Law – Settlement of Disputes ....................................................... 18

Annex 1 ............................................................................................................................... 21
Annex 2 ............................................................................................................................... 22
Annex 3 ............................................................................................................................... 25
Annex 4 ............................................................................................................................... 26
Annex 4 ............................................................................................................................... 30
Annex 5 ............................................................................................................................... 31

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

This Service Provider Agreement (the "Agreement") is entered into by and between Airbus Defense and Space, Inc. (the "Company") and Mercury Public Affairs, LLC, a company duly organized and existing under the laws of the United States, having its registered office at The Portrait Building, 701 8th Street, NW, Suite 650, Washington, DC 20001, represented by Adam Ereli, duly authorized for this purpose, (the "Service Provider") hereafter collectively referred to as the "Parties" or each individually referred to as a "Party."

## Section 1.   Definitions

1.1   In the Agreement, unless the context otherwise requires, the following words and expressions shall have the meanings set opposite them.

**Affiliate**

Any company in which EADS NV for the time being directly or indirectly holds and controls (i) less than a majority of the voting rights exercisable at general meetings of the members of that company on all, or substantially all, matters; or (ii) the right to appoint or remove directors having less than a majority of the voting rights exercisable at meetings of the board of directors of that company on all, or substantially all, matters; and any company in which EADS NV for the time being directly or indirectly exercises a joint control (with one or more other companies) on that company.

**Broker**

Per U.S. export regulation, 22 CFR 129.1, a broker means any person who acts for others in negotiating or arranging contracts, purchases, sales or transfers of defense articles or defense services in return for a fee, commission, or other consideration.

**Commencement Date**

May 1, 2013

**Commercial Campaign**

The Potential Foreign Military sales (FMS) and marketing campaign to the Customer in the Territory as described in Annex 1.

**Commercial Contract**

A contract for the sale of the Products entered into between the Company and the Customer.

**Confidential Information**

All information in written, oral or on electronic form transmitted by one or other of the Parties or which arises in the course of the Engagement in connection with the Commercial Campaign, in particular (by way of illustration only and without limitation) any assessment, report, study, forecast or other document prepared by one of the Parties to the extend they contain or otherwise reflect or are generated from such information, including the existence and contents of the Agreement.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

The following shall not be considered as Confidential Information, provided the recipient Party can establish without ambiguity that:

(a) it was validly in its possession before it was transmitted to it by the issuing Party as demonstrated by written records; or

(b) it was already or came into the public domain otherwise than through its unauthorized disclosure; or

(c) it was made available to it by a third party who had access to it lawfully.

**Service Provider Questionnaire**

The questionnaire filled out by the Service Provider, including all its annexes, and provided to the Company for its service provider selection process.

**Customer**

As defined in the Annex 1

**EADS NV**

European Aeronautic Defense and Space Company. EADS NV is the EADS Group holding company and has its registered office at P.O. Box 32008, 2303 DA Leiden, The Netherlands.

**EADS Group**

EADS NV and all its Subsidiaries and Affiliates from time to time.

**Force Majeure**

Any cause (not foreseeable at the Commencement Date) preventing either Party from performing any or all of its obligations which arises from or is attributable to acts, events, omissions or accidents beyond the reasonable control of the Party so prevented including without limitation strikes, lock-outs or other industrial disputes (involving the workforce of any third party), act of God, war, riot, civil commotion, terrorist attack, malicious damage, compliance with any law or governmental order, rule, regulation or direction, accident, breakdown of plant or machinery, fire, flood, or storm or default of suppliers or sub-contractors.

**Government Official**

(a) an employee, officer or representative of, or any person otherwise acting in an official capacity for or on behalf of

  (i) a national, state, or local government or any political subdivision thereof;

  (ii) an instrumentality, board, commission, court, or agency, whether

  (iii) civilian or military, of any of the above, however constituted;

  (iv) a government-owned/government-controlled association, organization or enterprise; or

  (v) a political party;

(b) a legislative, administrative, or judicial official, regardless of whether elected or appointed;

(c) an officer of, or individual who holds a position in, a political

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

|  | | party; |
|---|---|---|
| | (d) | a candidate for political office; |
| | (e) | an individual who holds any other official, ceremonial, or other appointed or inherited position with a government or any of its agencies; or |
| | (f) | an officer or employee of a supra-national organization (e.g., World Bank, United Nations, International Monetary Fund, OECD). |
| **Lobbying** | (a) | Influencing or attempting to influence executive or legislative action through oral or written communication with an executive, or legislative official; or |
| | (b) | Solicitation of others to influence an executive or legislative official. |
| **Lobbyist** | (a) | An individual who is employed and receives payments, or who contracts for economic consideration, including reimbursement for reasonable travel and living expenses, for the purpose of lobbying; |
| | (b) | An individual who represents an organization, association, or other group for the purpose of lobbying; or |
| | (c) | A local government employee who lobbies. |
| **Product** | | Shall have the meaning as defined in Annex 1 to the Agreement. |
| **Regulations** | | As defined in the Representations and Warranties, Annex 4 to the Agreement. |
| **Remuneration** | | Shall have the meaning as defined in Annex 3 to the Agreement. |
| **Representations And Warranties** | | The representations and warranties made by the Service Provider to the Company and attached as Annex 4 to the Agreement and as Annex 1 to the Service Provider Questionnaire. |
| **Subsidiary** | | Any company in which EADS NV for the time being directly or indirectly holds or controls either (i) a majority of the voting rights exercisable at general meetings of the members of that company on all, or substantially all, matters; or (ii) the right to appoint or remove directors having a majority of the voting rights exercisable at meetings of the board of directors of that company on all, or substantially all, matters; and any company which is a Subsidiary of another company shall also be a Subsidiary of EADS NV of which that other company is a Subsidiary. |
| **Tasks** | | The tasks to be performed by the Service Provider as described in Annex 2 as amended from time to time by the Parties |
| **Territory** | | Shall have the meaning as defined in Annex 1 to the Agreement. |

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

1.2 Clause and paragraph headings in the Agreement and its annexes ("Annexes") are included for ease of reference only and shall not affect the construction of, or be taken into consideration in interpreting, the Agreement.

1.3 The Annexes shall form part of the Agreement and shall have the same force and effect as if set out in the body of the Agreement. Accordingly, references to the Agreement shall include references to its Annexes.

1.4 In the Agreement, unless context otherwise requires:

1.4.1 The singular shall include the plural and vice versa;

1.4.2 References to any document or agreement include a reference to that document or agreement as from time to time amended, supplemented, otherwise modified, subject to any restrictions on such amendments, supplements or modifications set forth herein.

## Section 2.   Engagement

2.1 EADS Group is the European leader in the aeronautic, defense and space industries.

2.2 Airbus Defense and Space, Inc., which is part of EADS Group, is or wishes to conduct a Commercial Campaign in the Territory.

2.3 The Company requires the assistance and advice of a Service Provider for the successful completion of the Commercial Campaign.

2.4 Following a selection process, the Company has retained the Service Provider.

2.5 The Company has therefore agreed to engage the Service Provider and the Service Provider has agreed to assist and advise the Company with respect to the Commercial Campaign.

2.6 It is expressly understood and agreed by the Parties that the Company has relied on the information contained in the Service Provider Questionnaire as well as on the statements contained in the Representations and Warranties prior to entering into the Agreement.

2.7 By entering into the Agreement, the Service Provider confirms that the information contained in the Service Provider Questionnaire and the statements made in the Representation and Warranties are true, complete and accurate as of the Commencement Date. The Service Provider shall promptly notify the Company of any changes which could render the information contained in the Service Provider Questionnaire or the

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

statements made in the Representation and Warranties untrue, incomplete or inaccurate.

## Section 3.   Status

3.1   The Service Provider retains sole and absolute discretion in the manner and means to carry out its duties under the Agreement. Accordingly, the relationship between the Company and the Service Provider is that of an independent contractor and shall not be considered or construed as to create any partnership, joint venture, agency, employment or other form of agreement or relationship other than as expressly set forth herein.

3.2   In carrying out its duties, the Service Provider shall not hold itself as a partner, an agent or an employee of the Company and shall take immediate actions to rectify a situation which could lead to anyone believing that the Service Provider is acting in any of such capacities.

3.3   It is expressly agreed that the Service Provider has not the authority to incur any expenditure on behalf of, create any obligations for, represent or legally bind the Company. The Service Provider shall not hold itself having such authority.

3.4   It is expressly agreed that commercial agents' regulations whether European or other do not apply to the Engagement and that therefore no compensation or indemnification shall be due by the Company to the Service Provider if the Engagement is terminated by the Company or expires and is not renewed by the Company.

3.5   Nothing in the Agreement prevents the Company from engaging another Service Provider to assist and advise on a similar campaign in the Territory.

3.6   Nothing in this Agreement authorizes the Service Provider to act as a Lobbyist, or conduct any Lobbying activity, as defined in Section 1.

## Section 4.   Service Provider's Duties

4.1   For the duration of the Engagement, the Service Provider shall:

4.1.1   Perform the Tasks and all other tasks necessary for the successful completion of the Commercial Campaign with all due care, skill and ability, and in compliance with all applicable laws;

4.1.2   Devote such time and efforts and be available at all times on reasonable notice to provide such assistance, information and advice as the Company may require and otherwise send all relevant information when necessary to the Company resulting from its obligations under the Agreement;

4.1.3   Maintain a regular and pertinent exchange of information and meet regularly with the Company to review the progress of the Commercial Campaign and assess jointly the Tasks assigned by the Company. The Company reserves the right to change the Commercial Campaign and/or the Tasks upon a thirty (30) day prior written notice;

4.1.4   Send written progress reports to the Company on a regular basis describing the nature of the work performed;

4.1.5   Maintain accurate books, records and internal controls at all times, sufficient to provide reasonable assurances that the Tasks and related activities are executed in accordance with the terms and conditions of the Engagement, and allow the Company's representatives and professional advisors full access, on reasonable notice, during normal business hours, to the Service Provider's premises, senior management, employees, independent sub-contractors, books, records or any other documents related to the Commercial Campaign for review and audit purposes;

4.1.6   Fully cooperate with and provide assistance to the Company by granting access to documents, records and personnel and/or providing any documents, records or statements as the Company may request in the event that it is subject to any request, investigation or is involved in legal or administrative proceedings;

4.1.7   Always act in the best interests of the Company and the Commercial Campaign, and in particular alert the Company, as soon as possible, of any fact coming to its or his knowledge which would be of a nature to harm the interests or the reputation of the Company or affect the success of the Commercial Campaign.

4.2   The Service Provider shall not be engaged in, and shall ensure that none of its Subsidiaries or Affiliates be engaged in or take a financial interest in any other business activity if:

4.2.1   such activity may cause a breach of any of the Service Provider's Duties and obligations under the Agreement or may create a situation of conflict of interests; or

4.2.2   its purpose or result is to support or promote a campaign or a product that competes directly or indirectly with the Commercial Campaign or the Product or the business of the Company.

4.3   In the course of the Engagement, the Service Provider will perform only the duties set forth in this Section 4 the Service Provider Agreement and as directed by Company. The Service Provider agrees that it will not perform any acts in connection with the Engagement not explicitly authorized by the Service Provider Agreement, unless the Service Provider first receives written authorization from the Company.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

4.4   The Service Provider shall not use any subcontractors, sub-agents or
        other third parties in the performance of the Tasks, unless it first receives
        written authorization from the Company.

4.5   In any event, the Service Provider shall give priority to the performance of
        the Tasks over any other business activities undertaken by it during the
        course of the Engagement.

4.6   The Service Provider shall comply at all times with all applicable laws and
        regulations and shall inform the Company of any changes in the laws or
        regulations in the Territory or the country of incorporation that might
        affect in whole or in part the Service Provider's ability to carry out the
        Commercial Campaign, perform the Tasks or receive the Remuneration.
        In particular, and  in light with the Representations and Warranties made
        in respect of compliance with the Regulations, the Service Provider shall
        not and shall ensure that its executives, employees or sub-contractors
        shall not:

        4.6.1   violate the Regulations;

        4.6.2   engage in any action or allow any such action to take place which
                    could, as a result of the enforcement of the Regulations:

                    4.6.2.1   render the Company, their representatives, staff or
                                  shareholders liable; or

                    4.6.2.2   lead to the commencement of investigations or legal or
                                  administrative proceedings against the Company, their
                                  representatives, staff or shareholders either in the
                                  Territory or any other country.

4.7   The Service Provider expressly allows the Company to disclose the terms
        of the Representations and Warranties made and obligations subscribed
        by the Service Provider in relation to compliance with Laws and
        Regulations to any third party including enforcement authorities, and
        acknowledges that the Company will have no obligation to inform the
        Service Provider prior to or compensate the Service Provider for making
        such disclosure.

        4.7.1   If this agreement results in any U.S. Government Foreign Military
                    Funded Direct Commercial Sales, the Company will disclose the
                    existence of this Agreement and certain terms and conditions,
                    including Annex 2, Tasks to be performed by the Service Provider,
                    and Annex 3, Remuneration, to the U.S. Government.

4.8   In connection with the Engagement, neither the Service Provider nor any
        of its officers, directors, employees or sub-Service Providers shall offer,
        pay, give, (or promise or authorize the payment or giving of) any money,
        gift, or anything of value, directly or indirectly, to a Government Official,
        while knowing or having reason to know that any portion of such

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

exchange is for the purpose of:

4.8.1   Influencing any act or decision of any such Government Official(s),
or inducing such Government Official(s), to do or omit to do any act
in violation of the lawful duty of such Government Official(s) in
order to assist the Company or the Service Provider, or any
Affiliate, in obtaining or retaining business, or directing business to
any third party;

4.8.2   securing an improper advantage;

4.8.3   inducing such Government Official(s) to use his or her influence
with any government or instrumentality thereof to affect or
influence any act or decision of such government or
instrumentality; or

4.8.4   providing an unlawful personal gain or benefit, of financial or other
value to such Government Official(s).

4.9    In the course of the Engagement, the Service Provider shall, and ensure
that its executives, employees or sub-contractors shall, comply at all
times with the principles contained in EADS Business Ethics Policy and
Rules, the Company's Code of Ethics, and the Company's Gift &
Hospitality Policy.

4.10   The Service Provider will complete, sign and return to the Company all
the Annexes with the executed Service Provider Agreement. The Service
Provider is not authorized by the Company to perform the Tasks until the
Service Provider executes all the Annexes.

4.11   The Service Provider will execute the Representation and Warranties on
an annual basis, and agrees to furnish further statements as may be
required from time to time.

4.11.1  The Service Provider will provide the Company a copy of the
Service Provider's Annual Brokering Report submitted to the U.S.
Department of State, Directorate of Defense Trade Controls
Compliance, no later than fifteen (15) days after its submission.

4.12   To allow the Service Provider to perform its Tasks, the Company shall:

4.12.1  provide the Service Provider with all relevant information in its
possession required for the proper performance of the Commercial
Campaign;

4.12.2  assist the Service Provider, upon its request, in the performance of
the Tasks. The Company is free to decide what kind of assistance
is best suited for the performance of the Tasks and may send out in
the Territory such technical and commercial personnel as it may
deem necessary for the success of the Commercial Campaign;

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

4.12.3  advise immediately the Service Provider of the award of a
Commercial Contract.

4.13  The Service Provider shall report immediately to the Company any
violation of the Regulations of which it obtains knowledge, or has
reasonable grounds to believe occurred in respect of the Tasks to be
performed for the Company.

## Section 5.  Remuneration

5.1  In consideration of the Tasks performed by the Service Provider, the
Company shall pay the Service Provider the Remuneration.

5.2  The Remuneration is payable to the Service Provider during the whole
period of this Agreement.

5.3  The Company shall reimburse Service Provider for reasonable
transportation, lodging, meals, and miscellaneous expenses properly
borne by Service Provider in connection with performing under this
agreement, provided that the travel is authorized in advance by the
Company Point of Contact.  Service Provider will not add any fees to any
travel expenses.

5.3.1  All expenses for which reimbursement is sought must be detailed in
the corresponding monthly invoice along with supporting
documentation and consistent with the terms and conditions of this
Agreement.

5.4  The Service Provider shall send to the Company the invoices for the
amount to be paid in accordance with the terms defined in Annex 3. The
invoices should comply with all relevant applicable laws and regulations.

5.5  The Remuneration and expense reimbursements shall be paid to the
Service Provider by the Company, by bank transfer only, to the bank
account as set forth in Annex 3.

5.6  Both Parties agree that the Remuneration represents the entire
remuneration owed by the Company to the Service Provider and that,
unless otherwise agreed in writing; no other sums should be paid to the
Service Provider under the Agreement.

5.7  The Service Provider is solely responsible and shall indemnify the
Company for any taxes, charges or fees that may arise in connection with
the payment of the Remuneration.

5.8  The Company shall be entitled to deduct from the Remuneration any sums
the Service Provider may owe to the Company at any time.

5.9  Payment in full or in part of the Remuneration shall be without prejudice to
any claims or rights of the Company against the Service Provider in
respect of the performance of the Tasks.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

5.10   Without limitation, the Company may in its sole discretion withhold any payment due to the Service Provider under the terms of this Agreement if the Company has reason to believe or receives notification that the Service Provider has violated the provisions of the Regulations.

5.11   In the event of a conflict between the terms of this Section 5 and the terms defined in Annex 3, the terms defined in such Annex 3 shall prevail.

## Section 6.   Term and Termination of the Engagement

6.1   The Engagement shall  be deemed to have commenced on the Commencement Date (May 1, 2013) and shall expire within twenty five (25) months from the Commencement Date (May 31, 2015), unless and until terminated earlier:

6.1.1   in accordance with the terms of the Agreement; or

6.1.2   the Company giving the Service Provider not less than 1 (one) month's notice; or

6.1.3   the Service Provider giving the Company not less than 1 (one) month's notice.

6.2   Notwithstanding the provisions of clause 6.1, the Company has the right to terminate the Engagement with immediate effect without notice, and without the Service Provider's having any right to any compensation whatsoever and without the Company having any liability to make any further payment against the Remuneration if:

6.2.1   The Service Provider breaches its obligations under Section 4;

6.2.2   The Company becomes aware that any of the Representations and Warranties is untrue, incomplete or inaccurate;

6.2.3   The Service Provider breaches any other obligations under the Agreement and fails to correct such failure within fifteen (15) days following a request from the Company to do so;

6.2.4   The Service Provider commits any gross misconduct affecting the business of the Company;

6.2.5   The Service Provider commits any fraud, dishonesty or any acts which, in the Company's opinion, brings or is likely to bring the Service Provider or the Company into disrepute or to materially affect the interests of the Company;

6.2.6   An event of Force Majeure hinders the performance of the Service Provider's Duties for a period exceeding 30 (thirty) days upon notice of the Company or, in the Company's opinion, renders the

performance of the Commercial Campaign impossible or inappropriate;

6.2.7   A company competing with the business of the Company acquires, directly or indirectly, an interest in the Service Provider or, in the Company's opinion, the Service Provider's legal status, ownership structure or management changes significantly;

6.2.8   A petition or any comparable proceeding is filed against the Service Provider under insolvency or bankruptcy laws of the country of incorporation, the Territory or elsewhere, unless such ground for termination is prohibited under applicable local laws;

6.2.9   A change in the laws or regulations in the Territory affects in whole or in part:

6.2.9.1   the validity of the Agreement subject to clause 11.6; or

6.2.9.2   the Service Provider's ability to carry out the Commercial Campaign, perform the Tasks or receive the Remuneration.

6.2.9.3   The Company becomes aware or is notified that the Customer or any governmental authorities in the Territory or the country of incorporation objects to the use of the Service Provider.

6.3   The Service Provider shall report immediately to the Company any of the events described under clause 6.2 which it obtains knowledge or has reasonable grounds to believe occurred.

6.4   The rights of the Company to terminate the Engagement is without prejudice to any other rights, claims or remedies it might have at law or otherwise.

6.5   Upon the expiration or termination of the Engagement, the Parties shall be relieved of all their obligations except for the following:

6.5.1   The Parties remain subject to the confidentiality obligations as set out in Section 8;

6.5.2   The Service Provider shall:

6.5.2.1   immediately deliver to the Company all Confidential Information issued by the Company to it which is in its possession or under its control; and

6.5 2.2   irretrievably delete any Confidential Information issued by the Company to it stored on any compact disk or memory card, U.S.B sticks and all matter derived from such sources which is in its possession or under its control; and

Airbus Defense and Space, Inc
Service Provider Agreement Business Confidential

6.5.2.3   provide a signed statement that it has complied fully with
its obligations under this Section, clause 6.5.2.

## Section 7.   Liability

The Service Provider shall indemnify the Company against any and all losses, claims, costs,
damages or expenses incurred by the Company or for which the Company may become liable,
arising directly or indirectly from a breach by the Service Provider of any of its obligations
under the Agreement and/or the Representations and Warranties.

## Section 8.   Confidentiality

8.1   The Parties acknowledge that in the course of the Engagement they will
have access to Airbus Defense and Space, Inc. Proprietary and
Business Confidential Information ("Information"). The Parties have
therefore agreed to accept the restrictions in this Section.

8.2   The Parties undertake, in the course of the Engagement and for a
period of five (5) years following the date of expiry or termination of the
Engagement:

8.2.1   To keep secret the Information and to ensure respect of this clause
by its executives, employees or sub-contractors;

8.2.2   Not to divulge the Information to third parties without having
obtained the issuing Party's prior written consent;

8.2.3   Not to copy, reproduce or duplicate all or part of the Information
without having obtained the issuing Party's prior written consent;

8.2.4   To use the Information only for the purpose of the achievement of
the Commercial Campaign, to the exclusion of any other use;

8.2.5   To promptly return to the issuing Party all originals, copies and
reproductions of all Information in possession of the recipient Party
upon expiry or termination of the Engagement.

8.3   This restriction does not apply to:

8.3.1   Any disclosure that is required by law pursuant to an official
notification or injunction emanating from a court ;

8.3.2   Any disclosure to be made to an export credit agency upon its
request ;

8.3.3   Any disclosure made amongst the EADS Group Companies.

8.3.4   Any information disclosed pursuant to clause 4.7.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

     8.3.5   Any disclosure that Service Provider is required to make as a Broker with the U.S. Department of State, Directorate of Defense Trade Controls, in accordance with U.S. export control regulations defined under the International Traffic in Arms Regulations (ITAR) Part 129.3.

8.4   In the event of disclosure under this Section clause 8.3, the disclosing Party shall take all appropriate measures of protection.

8.5   It is expressly stated that the disclosure of Information by either of the Parties may not in any case be interpreted as conferring on the recipient Party any right whatsoever relating to this Information.

## Section 9.   Intellectual Property

9.1   The Service Provider hereby undertakes and cause that all original materials produced by it for the Company during the course of the Engagement, including but not limited to information, data, documentation, listing, report, memorandum, chart, analysis, material or deliverable, whatever the form and support, shall belong exclusively to the Company.

9.2   The Service Provider hereby irrevocably assigns all copyrights in the here above mentioned materials to the Company, including all rights of every kind in the materials for the entire duration of the copyright.  No rights are reserved to the Service Provider. The Parties intend that the Company shall be fully entitled to all intellectual property right produced by the Service Provider in connection with the Engagement.

9.3   The Service Provider agrees to indemnify and hold the Company harmless from and against any damages, losses, costs or expenses (including attorneys' fees) that may arise by reason of infringement by the Service Provider of any intellectual property rights of any third party in connection with the Engagement.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

## Section 10.  Correspondence and Notices

### 10.1  Correspondence

10.1.1  All correspondence between the Parties relating to the performance of the Agreement will be validly addressed to the addresses and for the attention of the following persons:

For the Company:

Andrew A. King

Address:   One Global View
2550 Wasser Terrace, Suite 9000
Herndon, VA  20171

Telephone:  (703) 466-5745
Fax:        (703) 466-5601
Email:      andy.king@eads-na.com

For the Service Provider:

Mercury Public Affairs, LLC
Attention: Ambassador Adam Ereli

Address:   The Portrait Building
701 8th Street, NW, Suite 650
Washington, DC  20001

Telephone:  (202) 261-4000
Fax:        (202) 261-4001
Email:      aereli@mercuryllc.com and finance@mercury.com

Notices should be sent to the following location:

Mercury Public Affairs, LLC
Attention: Bibi Rahim - Controller
Address:   14502 N. Dale Mabry Hwy, Suite 104
Tampa, Florida 33618

Telephone:  (813) 908-1380
Fax:        (813) 969-0368
Email:      finance@mercuryllc.com

10.1.2  All correspondence between the Parties under the Agreement shall be in English.

### 10.2  Notices

10.2.1  Any notice given under the Agreement shall be in writing and signed by or on behalf of the Party giving it and shall be served

Page 16 of 32

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

by delivering it personally, or sending it by pre-paid recorded delivery or registered post to the relevant Party at the address indicated above or by sending it by fax to the fax number indicated above. Any such notice shall be deemed to have been received:

10.2.1.1  if delivered personally, at the time of delivery;

10.2.1.2  in the case of pre-paid recorded delivery or registered post, 48 hours from the date of posting;

10.2.1.3  in the case of fax, at the time of transmission.

## Section 11.   Miscellaneous

### 11.1  Survivor

The above Section 7 "Liability" and below Section 12 "Applicable Law – Settlement of Disputes" shall survive the expiry or termination (howsoever occasioned) of the Engagement.

### 11.2  Assignment

11.2.1  The Company shall be entitled to assign, transfer, subrogate, or delegate in whole or in part any of the rights and/or obligations arising out the Agreement to any of the Companies of the EADS Group at its sole discretion and by simple written notice of assignment to the Service Provider.

11.2.2  The Service Provider shall not assign, transfer, subrogate, nor delegate in whole or in part any of the rights and/or obligations arising out the Agreement to a third party without the Company's prior written agreement.

### 11.3  Entire Agreement

Each Party acknowledges and agrees with the other Party that the Agreement together with its annexes or documents referred to in it constitute the entire agreement and understanding  between the Service Provider and the Company and supersedes any previous agreement between them relating to the Engagement, provided that this shall not exclude any liability which the Service Provider would otherwise have to the Company in respect of any false, misleading or fraudulent statements made by the Service Provider prior to the Commencement Date.

### 11.4  Variation

Any amendment to the Agreement shall be effective only if made in writing and signed by both Parties.

### 11.5  Waiver

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

No failure or delay from either Party in exercising any right, power or remedy under the Agreement shall operate as a waiver thereof or a waiver of any other rights, powers or remedies nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise of any such right, power, or remedy or the exercise of any other right, power or remedy; no waiver by either Party shall be effective unless it is given in writing by a duly authorized representative of such Party.

### 11.6  Severability

If any provisions of the Agreement or any part thereof are rendered void, illegal or unenforceable in any respect, the Parties shall seek to substitute for such provisions valid provisions that in their economic effect come so close to the original provisions that it can reasonably be assumed that the Parties would have executed the Agreement including new provisions. In the event that such provision cannot be found, the invalidity, illegality or unenforceability of any provision of the Agreement shall not affect the validity of the Agreement as a whole, unless the invalid provisions are of such essential importance to the Agreement that it can be reasonably assumed that the Parties would not have executed the Agreement without the invalid provisions.

## Section 12.  Applicable Law – Settlement of Disputes

12.1  The Agreement is governed exclusively by the laws of Delaware and of the United States of America as applicable.

12.2  The Parties shall attempt to reach an amicable settlement of all claims, controversies or disputes arising out of or in connection with any threatened, alleged or actual breach of this Agreement by either Party (a "Dispute") within 30 (thirty) days of receipt of notice of a dispute by one Party to the other. Any Dispute that is no so amicably settled shall be finally resolved exclusively through arbitration as hereinafter set forth.

12.3  Any Dispute which is not resolved as provided above shall be referred to and finally resolved by arbitration under the rules of the International Chamber of Commerce ("ICC"). Arbitration shall be conducted under the auspices of three arbitrators. Each Party may appoint an arbitrator to the panel and the two arbitrators selected by the Parties shall together agree on the appointment of a third arbitrator.

12.4  The procedure arbitration tribunal shall be governed by the rules of the ICC, with reference to the above mentioned governing law which shall be applicable to arbitration. However, the following procedural matters shall in any event be taken as agreed:

12.4.1  The arbitration shall take place in the Washington, DC area unless otherwise mutually agreed;

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

12.4.2 The language of the arbitration shall be English;

12.4.3 Each of the Parties may produce documents drawn up in the English language, without translation. Any document drawn up in a language other than English must be accompanied by its translation, completeness and accuracy of which has been certified into English. The orders and the arbitration award shall be drawn up in English;

12.4.4 The arbitrators shall only interpret and apply the terms and provisions of this Agreement and shall not change any such terms or provisions or deprive any Party to the Dispute of any right or remedy expressly provided for in this Agreement;

12.4.5 The arbitrators may award compensatory damages against any Party, but under no circumstances will special, consequential, punitive or multiple damages including, but not limited to, lost profits, be authorized, made or paid.

12.5 The arbitrators shall have no power to act in equity and shall adjudicate only in law. The arbitration award shall be final settlement and enforceable so far as concerns the Parties and shall not be subject to appeal.

12.6 The arbitration of any Dispute shall be final and binding upon the Parties to the maximum extent permitted by law.

12.7 Each Party shall bear its own expenses, including attorney's fees, in connection with the proceedings under this Section 12 and shall share equally the costs and expenses of the arbitration and the arbitrators; provided, however, that in the final award, the arbitral tribunal shall fix the costs of the arbitration and decide which of the Parties shall bear such costs and in what proportions.

12.8 Each party hereby irrevocably waives any and all rights which it may have to a jury trial relating to, or in conjunction with, any dispute arising under this agreement.

Signature page follows

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

In witness whereof, the parties have duly executed and delivered this Agreement by their
authorized representative as of the Commencement Date:

For:     **The Company**

Name:     _____

Title:     _____

Place:     _____

Date:     _____


Signature:_____


For:     **Mercury Public Affairs LLC - The Service Provider**

Name:     Kieran Mahoney

Title:     Partner

Place:     Tampa Florida

Date:     6 / 9 /2014


Signature:_____

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

Annex 1

## Commercial Campaign

The Commercial Campaign is the sale and marketing campaign of the Product, to the Customer in the Territory described hereunder:

The Company desires the services of Service Provider in support of the development of the Company's initiatives regarding potential Foreign Military Sales of the Airbus Transport and Mission Aircraft, as further described in Annex 2.

Commercial Campaign: Potential Foreign Military Sales (FMS)

Product:    Airbus Transport and Mission Aircraft (e.g., CN-235, C-295)

Customer:   Various foreign governments

Territory:  Those countries whose governments are eligible to participate in the U.S. Foreign Military Sales programs

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

**Annex 2**

**Tasks to be performed by the Service Provider**

Whereas in pursuance of the duties set out in Section 4 of the Agreement the Service Provider has to:

**Statement of Work**

1.  <u>Opportunity Assessment</u>.  Mercury will assist Airbus Defense and Space, Inc., in identifying and assessing potential markets for the Foreign Military Sales (FMS) sales of Airbus Group aircraft, and will collaborate with Airbus Defense and Space, Inc. to designate target countries in which to pursue FMS business opportunities.

    a.  Mercury will investigate new potential FMS markets for AG aircraft.  Resources will include contact with relevant U.S. and foreign government officials, market surveys or studies to which it has access, and publicly available information (such as foreign government websites and the news media).  Mercury will recommend potential FMS business opportunities to Airbus Defense and Space, Inc. and provide its evaluation of the information source(s) supporting its recommendations.  Mercury will also investigate and evaluate potential FMS opportunities that may be identified by Airbus Defense and Space, Inc. separately.

    b.  Mercury will assist Airbus Defense and Space, Inc. in determining target countries' requirements and evaluating how Airbus Defense and Space, Inc. might shape them, assessing the suitability of Airbus Defense and Space, Inc. product solutions, and identifying the major elements of an engagement plan that would be necessary to advance those solutions.

    c.  Mercury will work with U.S. and foreign government resources to develop assessments of the defense market(s) in target countries, to include budgetary and procurement processes, the likely availability of national funding and/or commitment of U.S. foreign aid to potential FMS business opportunities, and accessibility of key decision-makers.

    d.  Mercury will assist Airbus Defense and Space, Inc. in establishing the necessary FMS business contacts in the U.S. and relevant foreign governments, as well as arranging meetings and/or product demonstrations when appropriate.  These business contacts include, but are not limited to, U.S. security assistance officers and U.S. commercial counselors in target countries, country program directors at the implementing agencies in the United States, relevant personnel at the Defense Security Cooperation Agency (when required), security assistance/cooperation personnel at combatant commands (when required), and representatives of target countries' governments and/or military forces.

    e.  Mercury limits the scope of work to include only FMS.  Compensation for direct commercial sales and other services not covered in the Statement of Work will require an amendment to this Agreement.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

2.  Opportunity Development.  Mercury will coordinate with Airbus Defense and Space, Inc. to develop potential FMS business opportunities in designated target countries.

    a.  Mercury will assist Airbus Defense and Space, Inc. in developing and executing suitable engagement plans for designated target countries, and will facilitate contact with key U.S. and foreign government personnel in those countries (as well as local businesses when necessary).

    b.  Mercury will provide advice, as needed, on the business and cultural climates of target countries as they could potentially impact upon developing FMS cases for Airbus Defense and Space, Inc. products.

    c.  Mercury will collaborate with Airbus Defense and Space, Inc. to identify potential competitors, their likely offerings, possible strategies, and the degree to which they may be a threat to Airbus Defense and Space, Inc. business opportunities in designated target countries.

    d.  In collaboration with Airbus Defense and Space, Inc., Mercury will seek to assist key foreign government personnel, when possible, in drafting Letters of Request (LORs) for Price and Availability and LORs for Letter of Offer and Acceptance (LOA).  (It is understood that this can be a tightly controlled and closely held process not open to vendors' shaping efforts in some countries.)

    e.  Mercury will investigate and identify any potential opposition in the U.S. Congress, the U.S. State Department, or the U.S. Defense Department to Airbus Defense and Space, Inc.'s FMS business opportunities in designated countries, along with proposed remedies to such opposition.  Mercury will coordinate with Airbus Defense and Space, Inc.'s Government Relations team to augment Airbus Defense and Space, Inc.'s remedial efforts, if appropriate.

3.  Case Development.  Mercury will assist Airbus Defense and Space, Inc. during the FMS case development process (post-LOR to LOA submission) as needed.

    a.  Mercury will assist Airbus Defense and Space, Inc., as needed, on tracking the progress of writing the case once the U.S. government is in receipt of an LOR.

    b.  Mercury will advise Airbus Defense and Space, Inc., when necessary, on the progress of the 36(b) congressional notification process (both informal and formal).

    c.  Mercury will assist Airbus Defense and Space, Inc., as needed, in managing changes in circumstances in the target country.  These could include revisions to the requirements, cabinet/personnel shake-ups and other political/regional developments.

4.  FMS Case Implementation.  Mercury will assist Airbus Defense and Space, Inc. in tracking the implementation of the FMS case once the LOA has been offered to the target country.

    a.  Using resources developed during the opportunity assessment and

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

development phases, Mercury will assist Airbus Defense and Space, Inc. in tracking the offered FMS case through the approval and funding processes within target countries.

b.  In the event that a target country fails to implement an offered LOA, Mercury will investigate and advise Airbus Defense and Space, Inc. on the reasons for the failure, and will assist Airbus Defense and Space, Inc. in assessing the continued viability of the FMS opportunity and developing a recovery plan.

5.  Mercury will exchange regular correspondence and activity reports, as stated in Section 4 clause 4.1.4, describing the Tasks performed and related on-going activities.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

Annex 3

## Remuneration

In consideration of the Tasks performed by the Service Provider in the course of the Engagement, the Company shall pay the Service Provider the Remuneration defined below. The Remuneration due to Service Provider is consideration for performing the tasks to be performed by the Service Provider as described in Annex 2 and for fulfilling all terms and conditions of the Agreement, and is not contingent upon the award of any contract.

The Company will pay the Service Provider $10,125.00 per month, effective as of the Commencement Date of this Agreement.

The Service Provider shall submit monthly invoices for the Services provided and Expenses incurred, which shall be billed in U.S. dollars.

An invoice will be considered complete and payable only if the following information is included:

    a.   The report required in clause 4.1.4

    b.   Time sheets or similar documentation supporting the hours being invoiced and costs incurred, as necessary, identified with the task assigned

    c.   Invoices containing requests for reimbursement of expenses must include supporting documentation

The Service Provider shall submit invoices that comply with all relevant applicable law and regulations, such as applicable tax provisions (e.g. VAT identification no. etc) to the Company.

The invoices addressed to the Company shall be sent by the Service Provider to the following address:

Airbus Defense and Space, Inc., 2550 Wasser Terrace, Suite 9000, Herndon, VA 20171, Attention: Andy King; and additional copy to the same address Attention: Lance Van Dyke.

All complete and undisputed invoices submitted by Service Provider will be paid within forty-five (45) days of receiving them.

The remuneration shall be paid to the Service Provider by the Company by bank transfer only and in U.S. Dollars to the bank account of the Service Provider mentioned hereinafter, which bank shall be located in the country in which the services are provided or the Service Provider is based:

          Account Name: Mercury Public Affairs LLC
          Account Number:  4945339331
          Bank:  Wells Fargo Bank, N.A.
          ABA Number:  121000248
                   or
          SWIFT Code/BIC:  WFBIUS6S
          Bank Address:  420 Montgomery Street
                        San Francisco, CA  94163

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

Bank Contact:  Paula M. Struckman     Phone 612-667-8617
Payment notification email address: DASaccounting@mercuryllc.com

Annex 4

## Representations and Warranties

Mercury Public Affairs, LLC., The Portrait Building, 701 8th Street, N.W., Suite 650, Washington, DC 20001 ("the **Service Provider**"), duly incorporated in the state of New York (the "**Place of Incorporation**") duly represented by Ambassador Adam Ereli, acting as its Vice Chairman, offers to provide sales support consulting services to Airbus Defense and Space, Inc. ("the **Company**") in connection with a commercial campaign (the "**Campaign**") defined in Annex 1.

1.  **As to this Agreement**
    The Service Provider hereby represents that all the information submitted by the Service Provider as necessary for purposes of establishing this Agreement is true, complete and accurate; and

2.  **As to skills and knowledge**
    The Service Provider hereby represents that it possesses specialized knowledge and experience of the evaluation and decision-making process in the Territory, in particular in the areas of activities concerned by the Commercial Campaign, and also possesses all the technical and commercial skills required to assist the Company in the successful completion of the Commercial Campaign.

    The Service Provider represents that it possesses all necessary licenses and qualifications to perform the duties under the Service Provider Agreement.

3.  **As to other activities**
    The Service Provider hereby represents that it is not currently engaged in or has no financial interest in any business or is not subject to any professional, ethical or fiduciary duty which could create a conflict of interests with the provision of consultancy services to the Company for the purpose of the Campaign, except as disclosed against question.

    Other than disclosed at Exhibit A, neither any officer, director, owner or employee of the Service Provider  or of any affiliate of the Service Provider nor any immediate family member of such persons (collectively, the "Covered Persons") holds any position as a Government Official.

    In their roles as Government Officials as disclosed in Exhibit A, the Covered Persons in question have no power, duties and responsibilities that would conflict with the Service Provider's representation of the Company under the Service Provider Agreement and will take no action involving or on behalf of the Company in their roles as Government Officials.  Moreover, any such Covered Person will disclose as appropriate to any governmental agency or instrumentality to which such information might be relevant that (a) the Service Provider represents the Company under the Sales Support Service Provider Agreement, and (b) the Covered Person has an affiliation with the Service Provider.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

4. **As to the status of intermediaries**
   The Service Provider hereby represents that after prior suitable consultations with its own advisors:

   a. it is fully aware of and fully understand the laws and regulations in force in the Place of Incorporation and in the Territory as they apply to the status of intermediaries or Service Providers including those prohibiting or imposing restrictions or obligations based on the mode of remuneration of the intermediary or Service Provider (e.g remuneration based on the award of contracts by the customer) or the nature of the activity performed (e.g contact with public officials, lobbying, etc) by the intermediary or Service Provider; and

   b. there is no legal or customary provision or arrangement in force in the Place of Incorporation or the Territory which prevents it from or imposes specific conditions for entering into any consultancy agreement with the Company, except as disclosed against of the Service Provider Questionnaire; and

5. **As to criminal records**
   The Service Provider hereby represents that neither it, nor any of its executives, employees or sub-contractors has been directly or indirectly involved in acts, or has been convicted or is currently under a criminal investigation under the laws of the Place of Incorporation, the Territory or elsewhere, for acts relating to bribery, corruption, money laundering or violation of laws or regulations in force governing business corporations.

6. **As to compliance with  laws and regulations**


**Anti-Corruption Laws and Regulations:**
The Service Provider hereby represents that, after prior suitable consultations with its own advisors, it is and its executives, employees and sub-contractors are fully aware of, familiar with and fully understand:

   a. the provisions of the Convention on Combating Bribery of Foreign Public Officials in International Business Transactions, signed under the auspices of the OECD on December 17, 1997 (the "Convention"), its coming into force, and in particular, the prohibitions, obligations and sanctions provided for in the Convention;

   b. all applicable laws and regulations in force in the country where the services are being performed and in any country with jurisdiction over the activities of the Service Provider that deal with the same or comparable subject matter as that of the Convention;

   c. all applicable laws and regulations in force in the Place of Incorporation or the Territory arising from the coming into force of the Convention (subject to these countries being signatory to the Convention) or those which deal with the same or a comparable subject matter as the Convention, and any other legal provisions applicable in the Place of Incorporation or the Territory arising from

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

International anti-corruption instruments (including without limitation the U.N. Convention against Corruption which came into force on 14 December 2005);

d. all applicable U.S. and local laws, regulations and administrative requirements including, without limitation, the United States Foreign Corrupt Practices Act of 1977 ("FCPA"), and any anti-corruption, anti-money laundering, anti-terrorism, export control, economic sanction and anti-boycott laws, regulations and administrative requirements applicable to the Service Provider

**U.S. Export Control Laws and Regulations:**
The Service Provider hereby represents that they are registered, and are in good standing, as a Broker with the U.S. Department of State, Directorate of Defense Trade Controls, in accordance with U.S. export control regulations defined under the International Traffic in Arms Regulations (ITAR) Part 129.3.

The Service Provider hereby represents that it is and its executives, employees and sub-contractors are fully aware of, familiar with and fully understand:

a. the provisions of the U.S. export control laws and regulations to include the International Traffic in Arms Regulations, the Export Administration Regulations and the Foreign Asset Control Regulations;

b. the provisions of U.S. export control laws that pertain to:

1. Brokering of defense articles;
2. Reexport/retransfer of U.S. origin technical data, technology and commodities;
3. Restrictive Trade Practices and Boycotts;
4. U.S. and UN Embargoes and sanctions; and
5. Facilitation of prohibited activity with embargoed or sanctioned entities;

c. the penalties associated with violations of U.S. export control laws

All together the Anti-Corruption and U.S. Export Control Laws shall be referred to as the "Regulations". The Service Provider hereby further represents and warrants that neither it nor any of its executives, employees and sub-contractors has violated the Regulations.

The Service Provider represents that it has not, nor does it know or have reason to know that any of its officers, directors, employees, sub-contractors or agents has, directly or indirectly, offered, paid, given, (or authorized the payment or giving of) any money, gift, or anything of value to a Government Official, while knowing or having reason to know that any portion of such exchange is for the purpose of:

a. influencing any act or decision of any such Government Official(s), or inducing such Government Official(s), to do or omit to do any act in violation of the lawful duty of such Government Official(s) in order to assist the Service Provider, the Company, or any Affiliate, in obtaining or retaining business, or directing business to any third party;

b. securing an improper advantage;

c. inducing such Government Official(s) to use his or her influence with any

        government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality; or

     d.  providing an unlawful personal gain or benefit, of financial or other value to such Government Official(s).

The Service Provider represents that it has not, nor does it know or have reason to know that any of its officers, directors, employees, sub-contractors or agents are ineligible to contract with, or to receive a license or other approval to import or export defense articles or otherwise participate in transactions involving U.S. origin defense articles or technical data.

The Service Provider represents that it received, reviewed and understand, and shall comply with the EADS Business Ethics Policy and Rules and Gift & Hospitality Policy (the "Policies"), and has taken steps to ensure that all employees of Service Provider involved in Service Provider's work performed for the Company are familiar with the requirements of the Policies and shall comply with the Policies.

The Service Provider represents that it shall notify the Company immediately if subsequent developments cause any statements made or information provided in these Representations and Warranties to be inaccurate or incomplete.

For and on behalf of:   **The Service Provider**

Name:   Kieran Mahoney

Title:   Partner

Place:   *Tampa Florida*

Date:   *6  19  /2014*

Signature:

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

Annex 4

## Exhibit A

### Identification of Government Officials

The Service Provider hereby identifies any of its shareholder, beneficial owner, officer, director or employee of the Service Provider or its affiliates, or any immediate family member of such persons, who is a Government Official.

| Name of Government Official | Relationship to Service Provider | Type of Government Official | Date Relationship with Service Provider |
|---|---|---|---|
| None | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The Service Provider agrees to amend and update this Exhibit A if such information contained in this schedule is no longer accurate. The Service Provider will immediately notify the Company of any such change in circumstances.

For and on behalf of:     **The Service Provider**

Name:     Kieran Mahoney

Title:     Partner

Place:     *Tampa Florida*

Date:     *6  19  /2014*

Signature: _____

Page 30 of 32

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

**Annex 5**

## Certification

As Mercury Public Affairs, LLC ("Service Provider"), I certify that, in regard to all of our work on behalf of the Company:

1. I am familiar with and understand the requirements of the Regulations.

2. I am registered, and am in good standing, as a Broker with the U.S. Department of State, Directorate of Defense Trade Controls.

3. I have received, reviewed and understand, and will comply with the EADS Code of Ethics and Gift & Hospitality Policy (the "Policy"), and I have taken steps to ensure that all employees of Service Provider involved in Service Provider's work on behalf of Company are familiar with the requirements of the Policy and will comply with the Policy.

4. In its performance of the Tasks, the Service Provider has not, nor does it know or have reason to know that any of its officers, directors, employees, sub-Service Providers, or agents has, directly or indirectly, offered, paid, given, (or authorized the payment or giving of) any money, gift, or anything of value to a Government Official, while knowing or having reason to know that any portion of such exchange is for the purpose of:

    a. influencing any act or decision of any such Government Official(s), or inducing such Government Official(s), to do or omit to do any act in violation of the lawful duty of such Government Official(s) in order to assist the Service Provider, the Company, or any Affiliate, in obtaining or retaining business, or directing business to any third party;

    b. securing an improper advantage;

    c. inducing such Government Official(s) to use his or her influence with any government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality; or

    d. providing an unlawful personal gain or benefit, of financial or other value to such Government Official(s).

5. I agree to notify the Company immediately if subsequent developments cause this certification and information reported herein to be inaccurate or incomplete.

Airbus Defense and Space, Inc.
Service Provider Agreement Business Confidential

I acknowledge that the Company shall rely on this certificate.


For and on behalf of:   **The Service Provider**

Name:    Kieran Mahoney

Title:    Partner

Place:    _Tampa, Florida_

Date:    _6 / 9 /2014_


Signature: _____

EXHIBIT 2



**THIRD PARTY QUESTIONNAIRE**
Issue April 2015                                                                                           STRICTLY CONFIDENTIAL

This Questionnaire (including all of its appendices incorporated herein and made a part hereof) is a fundamental component of the due diligence Airbus Group conducts prior to entering into agreements with any third parties supporting our business development initiatives. We know that our success depends largely on the support of third parties, suppliers, and other external supporters. At the same time, Airbus Group is held accountable for having adequate processes and controls in place to manage risks — in particular compliance risks — associated with third party relationships. We appreciate you taking the time to fill out this Questionnaire completely and accurately, including providing us with the additional documents referenced herein.

All answers and representations made herein, and the information in the additional documents to be provided with this Questionnaire, are considered material to our decision as to whether to enter into a Third Party Agreement with you. We can only begin our internal process of review of a potential engagement with you, in compliance with our Business Development Anti-Corruption Policy, after this Questionnaire is fully completed and signed and, together with all the documents references in Section 10 below is submitted to the respective Airbus Group Division Head of Sales in the English language. Complete answers to all questions is mandatory and must be provided at the time this Questionnaire and the other required documents are first submitted to the respective Airbus Group Division. Prior to completing this Questionnaire, we expect you to review, understand, and be prepared to adhere to the Airbus Group Standards of Business Conduct (http://www.airbusgroup.com/dam/assets/airbusgroup/int/en/group-vision/ethics-compliance/documents/Standards_Airbusgroup_EN/Standards_Airbus Group_EN.PDF)

**IS THIS AN UPDATE?**        Yes _____ No x   Date: 4/30/2015

Please note this questionnaire must to be completed and signed at least every 3 years.

All documents provided must be mandatory translates into English

| Country(ies) where the BDSI will be performed | |
|---|---|

1. **THIRD PARTY — GENERAL DESCRIPTION**

| | | |
|---|---|---|
| 1.1 | Name of the Third Party and all affiliated companies<br><br>(i.e. registered names of legal entities) | Mercury Public Affairs LLC a subsidary of DAS Holdings Inc. (Omnicom Group) |
| 1.2 | Legal form of Third Party<br><br>(e.g.: GmbH, Société Anonyme, Proprietary, Limited etc.) | Limited Liability Company |
| 1.3. | Incorporation Date<br><br>Term of Validity of registration (if applicable) | 9/30/2003 |
| 1.4. | Certificate of Registration of the company :<br><br>Place of registration or declaration Number at Trade Register | State of Delaware |
| 1.5. | Contact Details :<br><br>Registered office address in the Country:<br><br>Operational address in the Country Name of legal representative:<br><br>Phone number:<br><br>Cell phone:<br><br>Fax:<br><br>E-mail:<br><br>Website: | 701 8th Street NW, Suite 650<br><br>Washington DC 20001 USA<br><br><br>202-261-4000<br><br>n/a<br><br>202-261-4001<br><br>finance@mercuryllc.com<br><br>www.mercuryllc.com |

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement.
Its contents shall not be disclosed © Airbus Group - 2015

Number of words 3864, Number of characters 21403



**THIRD PARTY QUESTIONNAIRE**
Issue April 2015

| 1.6. | Tax registration number | |
|---|---|---|
| 1.7. | VAT number, including valid European VAT number if BP registered in EU | n/a |
| 1.8. | Issued Capital /Currency | US $ |
| 1.9. | Number of employees globally and in the relevant countries where services would be provided to Airbus Group | 118 |
| 1.10. | Third Party business description: (As described in the by-laws of the Company) | Public affairs |
| 1.11. | Personal details of the representative(s) empowered to bind the Third Party - and signing this questionnaire and related documents<br><br>Name<br><br>Date and Place of Birth<br><br>Nationality | <br><br><br><br>Kieran Mahoney<br><br><br>United States citizen |
| 1.12 | Relevant projects and business experience: List at least three companies, countries, and dates thereof. | See our website   http://www.mercuryllc.com/ |

## 2. THIRD PARTY OPERATIONAL ENTITY(IES) IN THE COUNTRY(IES)

| 2.1 | Please provide details on operational entity(ies) in the concerned Country(ies) (on which the Third Party will rely to fulfil all or part of its contractual obligations with the Airbus Group. | | |
|---|---|---|---|
| | | Country(ies): | Other Country(ies), if any: |
| | Name of operational entity(ies)<br><br>Nature of operational entity (e.g. company, branch etc.)<br><br>Disclose any current or past relationship with Airbus Group for each operational entity.<br><br>List all Officers and Directors of all such entities and disclose any potential conflicts of interest<br><br>Contact Details for each operational entity :<br><br>Contact Name:<br><br>Phone number: | | |

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement.
Its contents shall not be disclosed  © - Airbus Group – 2015



THIRD PARTY QUESTIONNAIRE
Issue April 2015

|  | Cell phone: <br> Fax: <br> E-mail: |  |  |
|---|---|---|---|
| 2.2 | If the company has no operational entity in the relevant Country(ies), or uses the services of another company or structure in the Country(ies), provide a details explanation why: | | |

## 3. BANK DETAILS

| 3.1 | Bank Account Details <br> Name of Third Party 's bank in the Country <br> Bank account number <br> Bank account Currency <br> SWIFT Code <br> IBAN |  |
|---|---|---|
|  | Bank account Currency | US Dollars $ |

## 4. SHAREHOLDERS, PARTNERS, PERSONS ENTITLED

| 4.1 | Are the shareholders the sole financial beneficiaries of capital or assets? | ☐ yes | ☒ no |
|---|---|---|---|

## 5. BOARD MEMBERS, EXECUTIVES MANAGERS OR DIRECTORS

| 5.1 | Is one or more of the directors, managers, executives, shareholders or partners, or persons entitled to or beneficiaries of all or part of the shares representing the capital of the Third Party a <br><br> • French, German, Spanish, UK or USA citizen | ☐ yes | ☒ no |
|---|---|---|---|

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement
Its contents shall not be disclosed  © - Airbus Group – 2015



**AIRBUS**
GROUP

THIRD PARTY QUESTIONNAIRE
Issue April 2015

STRICTLY CONFIDENTIAL

## 6. LINK WITH GOVERNMENT OFFICIALS

| | | | |
|---|---|---|---|
| 6.1 | Does any shareholder, beneficial owner, officer, director, employee of the Third Party, or of the operational entity(ies) of the Third Party in the concerned Country(ies), or any affiliated persons or companies of the Third Party, fall into one of the following categories of "Government Officials" : | ☐ Yes | ☒ No |
| 6.2 | • An employee, officer or representative of, or any person otherwise acting in an official capacity for or on behalf of (a) a national state or local government or any political subdivision thereof; (b) an instrumentality, board, commission, court or agency, whether civilian or military, of any of the above however constituted; (c) a government owned /government controlled association, organisation or enterprise, or (d) a political party? | ☐ Yes | ☒ No |
| 6.3 | • A legislative, administrative or judicial official, regardless of whether elected or appointed? | ☐ Yes | ☒ No |
| 6.4 | • An officer of, or an individual who holds a position in, a political party or a candidate for political office? | ☐ Yes | ☒ No |
| 6.5 | • An individual who holds any official or other appointed or inherited position with a government or any of its agencies? | ☐ Yes | ☒ No |
| | • An individual who has family or economic links with a government or any of its agencies? | ☐ yes | ☒ No |
| | List of persons concerned ............. including for each person area of same title Civil nationality, category of government /political body and position held | ☐ Appended | |
| 6.6 | • A person who formerly met one or more of the conditions in 6.2 — 6.5 above | ☐ yes | ☒ No |
| | Legal evidence of date of retirement (official certificate or copy of retirement card from concerned public administration) indicating release of all obligations and the right to provide services such as those subject to this particular NDA | ☐ Appended | |
| 6.7 | • An officer or employee of a supra-national organization (e.g. World Bank, United Nations, International Monetary Fund, and OECD), non-governmental organisation (e.g.: Union Africaine, Gulf Cooperation Council etc.) | ☐ yes | ☒ No |
| If an answer is marked "yes" in any of 6.5 to 6.7 above, please confirm that the Third Party is not restricted/prevented from fulfilling its duties by ticking the "I confirm" box: | | ☐ I confirm | |
| If there are restrictions / conflicts of interest limiting the Third Party's scope of business activities, please provide details : | | | |
| 6.8 | Please confirm the persons described in sections 5 and 6.1. above are not prevented from fulfilling their duties as Third Party. | ☒ I confirm | |
| 6.9 | Are there any contractual relationships between the Third Party or members of its operational entity(ies) in the concerned Country(ies) and any Government official / governmental body (as described in sections 6.1 — 6.7 above? | ☐ yes | ☒ no |

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement.
Its contents shall not be disclosed  © - Airbus Group – 2010

Number of words 3884, Number of characters 21403



|  | | ☐ Appended |
|---|---|---|
|  | List of banking relationship or official mandate assigned | |

## 7. LINK WITH CUSTOMERS & COMPETITORS

| 7.1 | Does any shareholder, beneficial owner, officer, director or employee of the Third Party or of its operational entity, or any affiliates thereof,<br>• have a family or commercial relationship with the End Customer and/or its affiliates? | ☐ yes | ☒ no |
|---|---|---|---|
| 7.2 | • have a commercial or contractual link / agreement with potential competitors of the concerned Airbus Group companies? | ☐ yes | ☒ no |
| 7.3 | Are any of the Third Party's managers executives or employees (or managers, executives or employees of its operational entity(ies or affiliate/s in the Country(ies) also a manager, executive or employee of the Customer or end user to which the products are to be sold or to whom the services will be rendered? If yes, please detail : | ☐ yes | ☒ no |

|  | List of concerned persons | ☐ Appended |
|---|---|---|
|  | indicating name, title, nationality, Draft place of residence, specifying type of link, List of concerned companies and products | ☐ Appended |

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement
Its contents shall not be disclosed. © - Airbus Group – 2016

Number of words 3884, Number of characters 21403



THIRD PARTY QUESTIONNAIRE
Issue April 2015                                                                      STRICTLY CONFIDENTIAL

## 8. THIRD PARTY COMPLIANCE

| 8.1 | Has any shareholder, beneficial owner, officer director or executive | | |
|---|---|---|---|
| | • been investigated or convicted in relation to fraudulent offences (including but not limited to bribery, corruption or money laundering, fraud, or any breach of fiduciary duty) | ☐ yes | ☒ no |
| | • been the subject of any bankruptcy, receivership or liquidation, been the subject of any official public incrimination and/or sanction by a statutory or regulated authority, | ☐ yes | ☒ no |
| | • been disqualified by a court from acting as a member of the administrative, management or supervisory bodies of any company or conduct of affairs of any company, during at least the last five years? | ☐ yes | ☒ no |
| | List of Managers, Directors or Executives concerned indicating name, title, nationality, DOB, place of residence | ☐ Appended | |
| | Official document (e.g. Judgement of Court) | ☐ Appended | |
| | Specify type of investigation, type and duration of sanction, name and location of Court | ☐ Appended | |
| 8.2 | Does the Third Party and/or its operational entity(ies) have : | | |
| | • a compliance programme in conformity with local, national and international regulation (e.g. UK Bribery Act.) in place? | ☐ yes | ☒ No |
| | • An external certification of its Compliance Programme? | ☐ yes | ☒ No |
| | Detailed description of your internal compliance programme on company letterhead | ☐ Appended | |
| | Copy of external certification and validity | ☐ Appended | |

## 9. AGREEMENT WITH THIRD PARTY

| 9.1 | Are there any approval requirements or authorizations whatsoever -- whether legal, regulatory, contractual or otherwise --required so that the Third Party and/or its operational entity(ies) in the Country(ies) relating to the BDSI may perform the required services? | ☐ yes | ☒ no |
|---|---|---|---|
| | Specific documentation (e.g. copy of the registration certificate for lobbyist, certificate of registration issued by the authorities such as Ministries of Defense, etc.) | ☐ Appended | |

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement.
Its contents shall not be disclosed © Airbus Group – 2015

Number of words 3884   Number of characters 21403



THIRD PARTY QUESTIONNAIRE
Issue April 2015                                                                  STRICTLY CONFIDENTIAL

## 10. ADDITIONAL DOCUMENTATION RELATED TO ABOVE SECTIONS OF THIS QUESTIONNAIRE

Note: Each document is to be individually signed and dated by the Legal Representative of the Third Party and must be provided in the order below with reference to the corresponding numbers (1-14) and the corresponding Heading as underlined below.

1.  Appendix 1 (related to Section 1). Description of Official Business Activity. By-Laws or other official company documents detailing the business activity of the Third Party and affiliates

2.  Appendix 2 (related to Section 1). Original Certificate of Registration

3.  Appendix 3 (related to Section 1). Profit & Loss Statements signed by your CFO and/or auditor for the previous 3 fiscal years

4.  Appendix 4 (related to Section 1.4). List of References with full description of the services performed and detailed contact information of managers with whom we can communicate about the respective services

5.  Appendix 5 (related to Section 2).        A separate Third Party Questionnaire for Operational Entities must be completed by each operational entity the Third Party intends to include in the respective BDSI.

6.  Appendix 6 (related to Section 3). Bank Reference Letter.

7.  Appendix 7 (related to Section 4). Official List of Third Party Shareholders
    a.  Include the names, share percentages held, nationalities, and places of residence (of companies and natural persons) of the shareholders
    b.  Include a copy of shareholder Registry
    c.  If all or some of the shareholders listed are not the Ultimate Beneficial Owners of the Third Party, provide legal documentation certifying ownership up to the ultimate physical beneficial owner(s)

8.  Appendix 8 (related to Section 5).        Official List of all Managers, Directors and Executives.
    a.  Include full names, titles, nationalities, dates of birth, registered places of residence
    b.  Include detailed and dated  resumes ("Curriculum Vitae") of persons listed indicating educational and professional background and, in particular, experience and know-how in the business activity of this particular BDSI

9.  Appendix 9 (related to Sub-sections 6.2-6.6). List of Persons with Links to Government Officials, and the requested detailed information, if applicable.

10. Appendix 10 (related to Sub-section 6.9). List of contractual relationships or official mandates regarding Operational Entities

11. Appendix 11 (related to Section 7).        Relationships with Customers, End Users and/or Competitors. List of concerned companies and/or persons indicating for all persons the names, titles, nationalities, dates of birth, place of residence, specifying type of relationship

12. Appendix 12 (related to Section 8.1). List of Managers, Directors or Executives Investigated or Charged, indicating their names, titles, nationalities, dates of birth, and places of residence. Include official documents (e.g. Judgements of the relevant Court). Also, specify the type of investigation, type and duration of any sanction, and the name and location of the relevant Court

13. Appendix 13 (related to Section 8.2).
    a.  Provide on company letterhead a detailed description of your internal compliance programme including numbers of employees dedicated to Compliance, primary topics covered, copies or internet links to primary documentation such as Codes of Conduct and Anti-Corruption policies, and any other information helpful in assessing the strength of your compliance programme.
    b.  Provide a copy of any external certification of your compliance program if available.

14. Appendix 14 (related to Section 9.1). Approval to Act Requirements. Provide any required registrations, certifications, or other official documentation necessary for you to provide the services under this BDSI.

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement.
Its contents shall not be disclosed  ©  Airbus Group – 2015



THIRD PARTY QUESTIONNAIRE
Issue April 2015

STRICTLY CONFIDENTIAL

"I, Mr[1]Kieran Mahoney in my capacity as (title)[2].CEO, legally representing and binding the Third Party, hereby acknowledge that:

- Airbus Group and its Divisions, subsidiaries, controlled companies, etc. (hereinafter collectively referred to as the "Company") will rely on the information contained in this Questionnaire and all appendices as a material pre-condition to entering into any contractual relationship with the Third Party. I hereby declare that all such information is true, complete and accurate and agree that the Company, acting in its sole discretion, may immediately terminate any contractual relationship with the Third Party (without the Third Party having any right to compensation or indemnity in respect thereof) if the Company becomes aware that any such information is or becomes untrue, incomplete or inaccurate.

- I read and understand the Airbus Group Standards of Business Conduct and recognize that the Third Party shall in all circumstances abide by those.

- I further agree that the Company acting in its sole discretion, may immediately terminate any contractual relationship with the Third Party (without the Third Party having any right to compensation or indemnity in respect thereof) if the Company becomes aware that the Third Party is in breach of any contractual commitments with the Company.

I hereby represent and warrant that:

1. all the information provided in this Third Party Questionnaire and it its appendices are true, complete and accurate; and

2. the Third Party possesses (or will possess) the requisite specialised knowledge, experience, technical and commercial skills to meet the foreseen contractual obligations; and

3. the Third Party possesses (or will possess) all necessary licenses and qualifications to perform the duties under the foreseen Third Party Agreement; and

4. there are no legal, regulatory, contractual, financial or other obstacles that will prevent the Third Party from performing its contractual duties under the foreseen Third Party Agreement; and

5. the Third Party is neither currently engaged in nor has any financial interest in a business, nor is it subject to any professional, ethical or fiduciary duty which could create a conflict of interest by performing its contractual obligations under the foreseen Third Party Agreement; and

6. the Third Party is aware of and fully understands the laws and regulations in force in the place of incorporation and in the country(ies) where it will be active, including those prohibiting or imposing restrictions or obligations based on the remuneration of the Third Party or the nature of the activities to be performed (e.g. contact with public officials, lobbying, etc.) by the Third Party; and

7. there is no legal, regulatory, contractual or other condition or agreement in force in the place of incorporation and in the country(ies) where it will be active which prevents it from or imposes specific conditions for entering into any agreement with the Company, except as disclosed in the Third Party Questionnaire; and

8. after prior consultations with its own legal and compliance advisors, it is — and its executives, employees and sub-contractors are and will remain — in compliance with the provisions of the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions and with all applicable international, national, regional and local laws, regulations, and administrative restrictions in force in the country(ies) where the services are being performed and in any country with jurisdiction over the activities of the Third Party that address bribery and corruption (including but not limited to the UK Bribery Act and the US Foreign Corrupt Practices Act), money-laundering fraud, anti-terrorism, export control, economic sanctions, boycotts, and comparable subject matter, together referred to as the "Regulations", and neither itself nor any of its executives, officers, directors, employees, sub-contractors or agents has violated the Regulations nor will they violate the Regulations; and

9. the Third Party has reviewed and will adhere to the Airbus Group Standards of Business Conduct and will take steps to ensure that all employees of the Third Party and any of its affiliates or subcontractors involved with the Airbus Group are familiar with the Airbus Group Standards of Business Conduct and shall comply with them; and

10. the Third Party shall notify the Company immediately if subsequent developments cause these representations and warranties, or any other information in the Questionnaire, to be inaccurate or incomplete.

---

[1] Name of the Legal Representative of the Third Party as mentioned in § 1.11 above
[2] Title of the Legal Representative of the Third Party as mentioned in § 1.11 above

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement
Its contents shall not be disclosed  © - Airbus Group – 2016

Number of words 3884. Number of characters 21403



STRICTLY CONFIDENTIAL

I acknowledge that Airbus Group will rely on the representations and warranties above.

Name of the Legal Representative of the Third Party[3]: Mr. Kieran Mahoney

Title of the Legal Representative of the Third Party: CEO

Place: Tampa, FL

Date: 4/30/2015

Signature of the Legal Representative of the Third Party: _____

---

[3] Legal Representative of the Third Party as mentioned in § 1.1.1 above

This document is the property of Airbus Group and shall not be communicated to third parties and/or reproduced without prior written agreement.
Its contents shall not be disclosed  © - Airbus Group - 2015

Number of words 3884  Number of characters 21403

EXHIBIT 3

19/11/2015



## SETTLEMENT PROPOSAL TO MERCURY

Amounts in USD

| Budget | Year | | |
|---|---|---|---|
| Concept | 2013 | 2014 | Total |
| Professional services | 81.000,00 | 71.875,00 | 152.875,00 |
| Reimbursable expenses | 18.658,23 | | 18.658,23 |
| **Total** | **99.658,23** | **71.875,00** | **171.533,23** |

Remarks: 8 months in 2013 @ 10150 $/month+ 7 months in 2014 @ 10150*1,14% $/moth + Reimbursable expenses (18,66 k$)

3 Invoices to be prepared

| | |
|---|---|
| Invoice 1  Professional activities in 2013 | 81.000,00 |
| Invoice 2  Reimbursable expenses | 18.658,23 |
| Invoice 3  Professional activities in 2014 | 71.875,00 |
| | 171.533,23 |

EXHIBIT 4

# Mercury.

**250 Greenwich Street**
**36th Floor**
**New York, NY 10007**

| Date | Invoice # |
|------|-----------|
| 12/1/2015 | 1M |

| Bill To |
|---------|
| Airbus Defence and Space, SA<br>Avda. De Aragon, 404<br>28022 Madrid, Spain<br>ATTN: Andrés Catalán |

| Purchase Order |
|----------------|
| |

| Description | Amount |
|-------------|--------|
| Professional activities in 2013 | 81,000.00 |

**Payment by Wire to:**
**Account Name: Mercury Public Affairs LLC**
**Account Number: 4945339331**
**Bank: Wells Fargo Bank, N.A.**
**ABA Number: 121000248**
**SWIFT Code/BIC: WFBIUS6S**
**Bank Address: 420 Montgomery St.**
**San Francisco, CA 94163**

| Phone # | Fax # | Please remit payment to:<br>Mercury Public Affairs LLC<br>ATTN: Accounts Receivable<br>437 Madison Ave, 9th Floor<br>New York, NY 10022-7043 | | |
|---------|-------|---|---|---|
| | | | **Total** | $81,000.00 |
| | | | **Payments/Credits** | $0.00 |
| (212) 681-1380 | (212) 681-1381 | | **Balance Due** | $81,000.00 |

# Mercury.

**250 Greenwich Street**
**36th Floor**
**New York, NY 10007**

| Date | Invoice # |
|------|-----------|
| 12/1/2015 | 2M |

| Bill To |
|---------|
| Airbus Defence and Space, SA<br>Avda. De Aragon, 404<br>28022 Madrid, Spain<br>ATTN: Andrés Catalán |

| Purchase Order |
|----------------|
|                |

| Description | Amount |
|-------------|--------|
| Reimbursable expenses | 18,658.23 |

**Payment by Wire to:**
**Account Name: Mercury Public Affairs LLC**
**Account Number: 4945339331**
**Bank: Wells Fargo Bank, N.A.**
**ABA Number: 121000248**
**SWIFT Code/BIC: WFBIUS6S**
**Bank Address: 420 Montgomery St.**
**San Francisco, CA 94163**

| Phone # | Fax # | Please remit payment to:<br>Mercury Public Affairs LLC<br>ATTN: Accounts Receivable<br>437 Madison Ave, 9th Floor<br>New York, NY 10022-7043 | | |
|---------|-------|-----------------|---|---|
| | | | **Total** | $18,658.23 |
| | | | **Payments/Credits** | $0.00 |
| (212) 681-1380 | (212) 681-1381 | | **Balance Due** | $18,658.23 |

# Mercury.

**250 Greenwich Street**
**36th Floor**
**New York, NY 10007**

| Date | Invoice # |
|------|-----------|
| 12/1/2015 | 3M |

**Bill To**

Airbus Defence and Space, SA
Avda. De Aragon, 404
28022 Madrid, Spain
ATTN: Andrés Catalán

Purchase Order

| Description | Amount |
|-------------|--------|
| Professional activities in 2014 | 71,875.00 |

Payment by Wire to:
Account Name: Mercury Public Affairs LLC
Account Number:  4945339331
Bank:  Wells Fargo Bank, N.A.
ABA Number:  121000248
SWIFT Code/BIC:  WFBIUS6S
Bank Address:  420 Montgomery St.
San Francisco, CA  94163

| Phone # | Fax # | Please remit payment to:<br>Mercury Public Affairs LLC<br>ATTN:  Accounts Receivable<br>437 Madison Ave, 9th Floor<br>New York, NY 10022-7043 | | |
|---------|-------|---|---|---|
| | | | **Total** | $71,875.00 |
| | | | **Payments/Credits** | $0.00 |
| (212) 681-1380 | (212) 681-1381 | | **Balance Due** | $71,875.00 |

EXHIBIT 5

**From:** Morris L. Reid
**Sent:** Friday, February 19, 2016 10:15 AM
**To:** DASAccounting <DASAccounting@mercuryllc.com>; Alexandra Bucaciuc <ABucaciuc@mercuryllc.com>
**Subject:** Fwd: Due payment approval process - progress info

_____

Begin forwarded message:

> **From:** <andres.catalan@airbus.com>
> **Date:** February 19, 2016, 3:02:55 PM GMT
> **To:** <mreid@mercuryllc.com>
> **Subject: RE: Due payment approval process - progress info**
>
> I do not know how they intend to do it. HHR has its HQ in Washington so maybe they want to take profit of this neighborhood.
>
> On the other side, I know that **in some cases they have performed the interview by phone** (for some Far East partners for instance). I imagine that they will contact you and jointly you will decide the most appropriate way. I do not when this contact will be done; the lawyers that lead our files are next week abroad (one in Brazil, another one in Thailand).
>
> Best regards
>
> **De:** Morris L. Reid [mailto:mreid@mercuryllc.com]
> **Enviado el:** viernes, 19 de febrero de 2016 15:49
> **Para:** Catalan Armengol, Andres
> **Asunto:** Re: Due payment approval process - progress info

Can this be done by phone?



Morris L. Reid
Partner
The Portrait Building
701 8th Street NW | Suite 650
Washington, DC | 20001
202.261.4000 office
202.261.4001 fax
www.mercuryllc.com

_____

On Feb 19, 2016, at 2:38 PM, "andres.catalan@airbus.com" <andres.catalan@airbus.com> wrote:

> Morris,
>
> We are certainly progressing in getting clearance to settle pending payments.
>
> After presenting the file to our HQ and examining the first comments by Hughes Hubbard & Reed (HHR), yesterday we had a meeting with them in Madrid to answer to some preliminary observations they had made.
>
> I do believe that we have solved most of the issues, but before giving the clearance HHR wants to interview you to complete the report (hopefully in the next weeks)
>
> Best regards
>
>
> Andrés Catalán
> Av. de Aragón 404
> 28022 Madrid
> Tel 91 585 72 54
> Móv. 650 91 65 00
> Mail: Andres.catalan@airbus.com
>
> www.airbusdefenceandspace.com



EADS CONSTRUCCIONES AERONAUTICAS, S.A., Sociedad Unipersonal (CIF A-28006104) - Domicilio social: Avenida de Aragón 404 (28022, Madrid, Spain).

----------------------------------------------------------

Este email (incluyendo cualquiera de sus archivos adjuntos) puede contener información confidencial o amparada por secreto profesional, así como información protegida por cualquier otra forma tendente a evitar su difusión. Si usted ha recibido este correo por error, por favor, informe al emisor inmediatamente y elimine de su sistema el mensaje. Usted no debe copiar este mensaje, ni utilizarlo, ni revelar su contenido a terceros por ningún motivo. EADS CONSTRUCCIONES AERONAUTICAS, S.A. declina cualquier tipo de responsabilidad derivada de la aparición de virus, o de falsificaciones o alteraciones en la transmisión de este email.
This email (including any attachments) may contain confidential and/or privileged information or information otherwise protected from disclosure. If you are not the intended recipient, please notify the sender immediately, do not copy this message or any attachments and do not use it for any purpose or disclose its content to any person, but delete this

message and any attachments from your system. EADS CONSTRUCCIONES AERONAUTICAS, S.A. disclaims any and all liability if this email transmission was virus corrupted, altered or falsified.

The information in this e-mail is confidential. The contents may not be disclosed or used by anyone other than the addressee. Access to this e-mail by anyone else is unauthorised.
If you are not the intended recipient, please notify Airbus immediately and delete this e-mail.
Airbus cannot accept any responsibility for the accuracy or completeness of this e-mail as it has been sent over public networks. If you have any concerns over the content of this message or its Accuracy or Integrity, please contact Airbus immediately.
All outgoing e-mails from Airbus are checked using regularly updated virus scanning software but you should take whatever measures you deem to be appropriate to ensure that this message and any attachments are virus free.

The information in this e-mail is confidential. The contents may not be disclosed or used by anyone other than the addressee. Access to this e-mail by anyone else is unauthorised.
If you are not the intended recipient, please notify Airbus immediately and delete this e-mail.
Airbus cannot accept any responsibility for the accuracy or completeness of this e-mail as it has been sent over public networks. If you have any concerns over the content of this message or its Accuracy or Integrity, please contact Airbus immediately.
All outgoing e-mails from Airbus are checked using regularly updated virus scanning software but you should take whatever measures you deem to be appropriate to ensure that this message and any attachments are virus free.

# EXHIBIT 6

# Mercury.

A HIGH-STAKES PUBLIC STRATEGY FIRM   www.mercuryllc.com

200 Varick Street, Suite 600
New York, NY 10014-4809

P: 212-681-1380
F: 212-681-1380

May 17, 2017

Dr. Tom Enders, CEO
Airbus Group SE
Mendelweg 30
2333 CS Leiden
The Netherlands

Re: Airbus/Mercury agreement

Dear Dr. Enders:

I write to you seeking your help and assistance in your executive capacity as the Chief Executive Officer of Airbus Group SE. I am the Chief Executive Officer of Mercury Public Affairs LLC—a wholly owned subsidiary of Omnicom Group, Inc. Airbus and Mercury have had a good and productive relationship related to government affairs and communication services provided by my company to yours, and we appreciate the opportunity to work with you.

An unfortunate situation has developed between your company and mine--- and I am confident that you and I can address it in a straightforward and businesslike manner that will be acceptable to us both.

As you may know, Airbus previously engaged Mercury to perform strategic government affairs and communications services. We worked closely with Airbus, and dedicated a great deal of time and work to those efforts. We did a professional job for you, as you would expect, and Airbus accepted the services and was complimentary about our work. Additionally, we prepared invoices as instructed and directed by Airbus, and forwarded the invoices to Airbus Defence and Space SA in Madrid, Spain, as requested. The last invoice was sent December 4, 2015.

Since that time, we have not been paid anything on the account, and our invoices remain due and unpaid. As a businessman, I am sure that you can understand our concern.

We have been assured on several occasions that payment is forthcoming—and we sincerely appreciate that commitment. However, as of today's date, that commitment and promise by Airbus has not been kept and no payment has been received—even in part.

I am aware of the unfortunate challenges facing you and your company concerning various compliance issues, and I sincerely hope that those matters are addressed quickly and resolved to your complete satisfaction.

Mercury.

If there is any way that Mercury can assist you in those efforts, please let me know—we would be pleased to help. Our company is composed of a number of people who work regularly at the highest levels of domestic and international government, politics, elections, communications, etc.

In fact, we have a former US Senator on our team, along with three former Members of the US House of Representatives. These individuals, and other Mercury individuals who are former high level legislative and executive staff in the US government, are on Capitol Hill and within the Administration daily—speaking directly to elected officials and staff in the US Congress and the White House. Both our professional and personal relationships could prove valuable to you.

In the interim, any help that you could provide to me concerning the invoices would be greatly appreciated and considered a personal favor. As a businessman, I understand fully your need to audit your accounts under the present circumstances. We have provided to Airbus all information requested, have met with your team on several occasions, and have been tremendously patient. Per the terms of our own review, there has been absolutely no allegation of impropriety concerning your Mercury account. While the amount due of approximately $171,000 USD is likely insignificant to Airbus, I think that you can understand that it is substantial to us.

If you will merely provide to me your personal assurance that this account will be paid in full, and provide some sort of timeframe, that would be enough for me. If possible, I would appreciate an initial partial payment of some kind.

I should point out that over time your attorneys have been in contact with our general counsel concerning payment of this debt. Those attorneys have been responsive and professional—but payment never materializes, and we receive almost no specific information. My thought is that we can avoid the use of attorneys and merely handle this matter fairly and expeditiously between two businessmen. I think that you will agree.

Thank you for your time in reviewing this matter. I look forward to your response and to concluding this situation in a way that is satisfactory to both of us. As stated above, we stand ready to assist you at any time concerning current or future challenges.

With kindest regards,


Kieran Mahoney - CEO

EXHIBIT 7

 **DEFENCE AND SPACE**

Mercury Public Affairs LLC
Kieran Mahoney
CEO
200 Varick Street, Suite 600
New York, NY 10014-4809
United States of America

- Pedro Antonio Blanco Manchado
- Massimo Cavalcanti
T +34 915 292 089
E pedro.blanco@airbus.com
  massimo.cavalcanti@airbus.com

25 July 2017

## BY COURIER

**Termination of Representation**

Dear Mr. Mahoney,

Thank you for your letter to Tom Enders dated May 17th, 2017.

We recognize the relationship you have had with Airbus and its divisions. We and our outside advisors have worked very hard to determine whether our relationship and the related compensation you claim are consistent with our policies and procedures and international norms regarding the due diligence, documentation, and transparency required for relationships with third parties.

We regret to confirm in writing that we cannot continue any relationship with you, and cannot release payment to you, consistent with our policies, our procedures, and international norms. As we have explained, our ability to continue business with you and to pay you depended ultimately on our ability to reach a successful outcome of our supplemental and enhanced due diligence review of our relationship with you, which we have undertaken with the assistance of legal and forensic advisors. As you are aware, we have also publicly disclosed criminal investigations by the U.K. Serious Fraud Office and France's *Parquet National Financier* Into the use of third-party agents in our commercial aviation business, circumstances the required strict adherence to our due diligence policies and procedures.

Accordingly, please cease and desist from any ongoing representation of Airbus or any Airbus division or subsidiary in any capacity. You are not authorized to provide any services for or on behalf of Airbus or its divisions or subsidiaries, or hold yourself out as having any affiliation whatsoever with Airbus or its divisions or subsidiaries.

Again, we regret that this is our decision, but we confirm its finality.

Sincerely

Pedro Antonio Blanco Manchado
Head of Legal Military Aircraft
Airbus Defence and Space

Massimo Cavalcanti
Head of Commercial & Contract Military Aircraft
Airbus Defence and Space

c.c.     Tom Enders, CEO Airbus
         John Harrison, General Counsel Airbus
         Andreas Riecker, General Counsel Airbus Defence and Space
         Frank Schmidt, Head of Ethics and Compliance Airbus Defence and Space

AIRBUS DEFENCE AND SPACE S.A., SOCIEDAD UNIPERSONAL
Avda. de Aragón 404 – 28022 Madrid
Registro Mercantil de Madrid – Tomo 530 – Folio 41 – Hoja M-10082
Inscripción 414. Constituida el 02/03/1923
C.I.F. nº A-28-006104

Pág. 1 de 1