UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Mercury Public Affairs LLC,

        Plaintiff,

v.

Airbus Defence and Space, S.A.U., f/k/a Airbus Military,
        Defendant.

**AMENDED COMPLAINT**
Civil Action, File No. 19-7518(VSB)

---

Plaintiff, by its attorneys Lippes Mathias Wexler Friedman, LLP, for its Complaint against Defendant respectfully shows to the Court and alleges as follows:

## NATURE OF THE ACTION

1. This is a diversity action involving breach of contract and account stated for the provision of consulting services by Plaintiff to Defendant.

## PARTIES

2. Plaintiff is a Delaware limited liability company with a principal place of business located in New York County.

3. Plaintiff's members are as follows:

 a. MPA Holdings Inc. which entity is incorporated in Delaware and has its principal place of business in New York County at 437 Madison Ave., New York, NY.

 b. High Stakes Holding Co., LLC, which is a Delaware limited liability company with its principal place of business in Tampa, Florida.

4. High Stakes Holding Co., LLC is comprised of the following natural persons whose state of citizenship is indicated next to his or her name:

| Member | State of Citizenship |
|---|---|
| - Kieran Mahoney - | Florida |
| - Kirill Goncharenko - | California |

2065415

| | |
|---|---|
| - Thomas Doherty - | New Jersey |
| - Michael McKeon - | New York |
| - John V. Weber - | Virginia |
| - Stefan Friedman - | California |
| - Morris Reid - | District of Columbia |
| - Ashley Walker - | Florida |
| - Michael DuHaime - | New Jersey |
| - Michael Soliman - | New Jersey |
| - John Lonergan - | District of Columbia |
| - Duncan McFetridge - | California |
| - John Gallagher - | New York |
| - Paul Bauer - | California |
| - Madia Butler - | New Jersey |
| - Fabian Nunez - | California |

5. Defendant Airbus Defence and Space, S.A.U, f/k/a Airbus Military is a Spanish corporation with its principal place of business operations in Madrid, Spain.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 USC § 1332 because the claim is between citizens of different states and involves an amount in controversy in excess of $75,000.00 exclusive of interest and costs.

7. Venue is proper in the Southern District of New York pursuant to 28 USC § 1391 as it is the judicial district in which a substantial part of the events giving rise to the claim occurred.

## FACTS

8. Plaintiff is in the business of providing individuals and businesses with, among other things, government and foreign affairs consulting services.

9. On information and belief, Defendant represents the defense and aerospace product and service division of the multi-national aerospace corporation known generally as "Airbus."

10. In order to grow and strengthen Defendant's product reach, and to help it navigate certain foreign affairs issues, on or about April 2013 Defendant hired Plaintiff under what was a

2065415

verbal agreement to represent Defendant's interests in their potential foreign military sales campaign (hereinafter "the Agreement").

11. More specifically, at Defendant's specific insistence and request, one of Plaintiff's tasks under the Agreement was to use Plaintiff's knowledge and experience to work through the proper channels for Defendant to sell their Airbus Transport and Mission Aircraft to the United Nations.

12. Similarly, Defendant also requested that Plaintiff use its knowledge and experience to work through the proper channels for Defendant to sell their Airbus Transport and Mission Aircraft to certain African nations.

13. The parties agreed that Plaintiff would be compensated for its services at the rate of $10,125.00 per month.

14. Following the Agreement, Plaintiff proceeded to dedicate substantial resources and time in 2013 and through August of 2014 to meet and confer with government officials in the United Nations and abroad in an attempt to bring about Defendant's goal of selling its military aircraft product.

15. A substantial amount of the meetings that Plaintiff set up and participated in took place in the United Nations headquarters in New York City, State of New York.

16. Defendant's employees often attended those meetings with Plaintiff at the United Nations headquarters in New York City, State of New York.

17. In addition, Plaintiff performed a significant portion of the "behind the scenes" support work that was necessary in bringing about the various meetings out of their headquarters in New York City, State of New York.

18. Not only did Defendant send its employees to New York to participate in the above meetings, but it was well aware of the work Plaintiff was performing out of its New York office.

19. Although the parties began their relationship on a verbal contract, during the time period in which Plaintiff was performing services for Defendant, the parties were working together to finalize a written contract to memorialize the terms of the Agreement.

20. Defendant insisted on drafting the written contract, so Plaintiff checked in weekly over the course of the Spring of 2014 to determine the status, and Defendant assured Plaintiff that it was preparing it and would forward once completed.

21. On or about June 2014, after Plaintiff had done a substantial amount of work under the Agreement, Defendant forwarded a written but unsigned contract ("Unsigned Contract") which, among other things memorialized the payment terms of the Agreement. A copy of the Unsigned Contract is attached hereto as **Exhibit 1**.

22. In so forwarding the Unsigned Contract, Defendant told Plaintiff that under its internal processes, because Plaintiff was a U.S. service provider, the Unsigned Contract must be with a U.S. company. Consequently, EADS North America, now Airbus Defense and Space, Inc., had assumed responsibility to generate the Unsigned Contract.

23. Generating the Unsigned Contract was the only contact Airbus Defense and Space, Inc., had with Plaintiff.

24. Under "Annex 1," to the Unsigned Contract, Plaintiff's task was defined as a service provider in support of Defendant's "initiatives regarding potential foreign military sales of the Airbus Transport and Mission Aircraft."

25. Under "Annex 2," to the Unsigned Contract, Defendant agreed to compensate Plaintiff for its services at the rate of $10,125.00 per month.

2065415

26. On or about June 9, 2014, Plaintiff executed and returned an edited version of the Unsigned Contract to Defendant.

27. Neither Defendant nor Airbus Defense and Space, Inc. ever countersigned the Unsigned Contract.

28. On or about August 2014, having received $0.00 in payments towards the services it had rendered despite multiple requests, Plaintiff ceased doing any further work for Defendant under the Agreement.

29. In the months following August 2014 when Plaintiff ceased work, the parties continued to have regular conversations regarding payment for Plaintiff's services under the Agreement.

30. At all times during these conversations, Defendant was promising payment to Plaintiff but indicated that it first needed to complete what it called an internal "due diligence" review of all of its various vendors.

31. At no point in time did Defendant object to Plaintiff's services or the invoices Plaintiff rendered to Defendant for those services.

32. In fact, on several occasions Defendant requested the invoices be sent to various places within its organization or modified to fit a particular format.

33. On or about April 2015, again in reference to Plaintiff's ongoing efforts to collect payment, Defendant requested that Plaintiff execute a "Third Party Questionnaire" as part of its "due diligence" review process. A copy of this completed Questionnaire is attached hereto as **Exhibit 2**.

34. On or about November 19, 2015, Defendant, in a signed email, sent to Plaintiff a document proposing an amount they would agree to pay to Plaintiff - $171,533.23 - and requested

2065415

that Plaintiff remit invoices to Defendant in those amounts. A copy of this payment proposal is attached hereto as **Exhibit 3**.

35. On or about December 5, 2015, Plaintiff accepted Defendant's proposal and sent invoices to Defendant for the services provided in 2013 and 2014, plus reimbursable expenses for a total amount due and owing Plaintiff of $171,533.23. A copy of Plaintiff's invoices are attached hereto as **Exhibit 4**.

36. When Defendant did not make payment to Plaintiff within a reasonable time following the submission of the invoices, Plaintiff began following up and was once again given the "run around" by Defendant. Specifically, in emails from Defendant dated February 19, 2016, it was stated by Defendant that: "we are certainly progressing in getting clearance to settle pending payments," and "I do believe that we have solved most of the issues, but before giving the clearance HHR wants to interview you to complete the report (hopefully in the next few weeks)." A copy of this email correspondence is attached hereto as **Exhibit 5**.

37. Plaintiff continued to acquiesce to all of Defendant's requests and, despite continued assurances it would be paid, said payment never materialized. On or about May 17, 2017, Plaintiff's CEO sent Airbus Group SE's CEO a letter regarding the unpaid invoices and requested that he commit to making the payment. A copy of this letter is attached hereto as **Exhibit 6**.

38. On or about July 25, 2017, Defendant sent a response letter to Plaintiff's letter of May 17, 2017. This letter indicated that Defendant considered the relationship with Plaintiff to be terminated and that no payment would be forthcoming. A copy of this termination letter is attached hereto as **Exhibit 7**.

2065415

39. Defendant's letter identifies as its reasoning for the non-payment that Defendant "cannot continue any relationship with you, and cannot release payment to you, consistent with our policies, our procedures, and international norms." Defendant went on to say that "our ability to . . . pay you depended ultimately on our ability to reach a successful outcome of our supplemental and enhanced due diligence review of our relationship with you, which we have undertaken with the assistance of legal and forensic advisers."

40. Critically, however, nothing in the letter provides any specific basis as to why Plaintiff did not pass Defendant's vague and completely undefined "due diligence" review or why said review would have anything to do with Plaintiff's performance under the Agreement and its entitlement to payment for said performance.

41. In addition, as was the case throughout the entirety of Plaintiff's dealings with Defendant, not once did Defendant object to any of the services Plaintiff provided nor to the invoices Plaintiff rendered to Defendant.

42. At all times Defendant accepted and were complimentary of the services Plaintiff provided.

43. Consequently, Defendant is indebted to Plaintiff for the invoices amount of $171,533.23.

## AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

44. Plaintiff repeats and realleges paragraphs 1 through 43 as if fully set forth herein.

45. The parties entered into a valid and enforceable Agreement whereby Plaintiff agreed to provide services to aid in Defendant's foreign military sales campaign and Defendant agreed to pay for those services at the rate of $10,125.00 per month plus reimbursement of expenses.

46. Plaintiff fully and completely performed all of the services Defendant requested under the Agreement.

47. Plaintiff rendered invoices to Defendant in accordance with the Agreement setting forth the amounts owed to Plaintiff under the Agreement.

48. Defendant accepted Plaintiff's services and invoices without objection or dispute.

49. Despite proper demand, Defendant failed and refused to pay Plaintiff for any of the services it rendered on Defendant's behalf.

50. As a result of said non-payment, Defendant have breached the Agreement with Plaintiff and is indebted to Plaintiff in the amount of $171,533.23 plus accrued statutory pre-judgment interest from August 1, 2014.

## AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF THE NOVEMBER 19, 2015 SETTLEMENT PROPOSAL

51. Plaintiff repeats and realleges paragraphs 1 through 50 as if fully set forth herein.

52. On or about November 19, 2015, Defendant, in writing, made an offer to Plaintiff to settle any existing issues relating to the services Plaintiff had provided for Defendant in the amount of $171,533.23.

53. Plaintiff accepted Defendant's offer by remitting the invoices Defendant requested in the amount of $171,533.23.

54. Despite demand, Defendant has failed and refused to pay the amount accepted as due and owing by both parties of $171,533.23.

55. Consequently, Defendant has breached the terms of the November 19, 2015 settlement agreement and is indebted to Plaintiff in the amount of $171,533.23.

## AS AND FOR A THIRD CAUSE OF ACTION FOR ACCOUNT STATED

56. Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

2065415

57. Plaintiff provided periodic invoices to Defendant concerning the amounts due under the Agreement.

58. Defendant received said invoices and retained the same without objection for several years.

59. An account for the provision of services has been stated between the parties.

60. Defendant has failed to make payment due on the stated account.

61. By reason of the foregoing, Defendant is indebted to Plaintiff in the sum of $171,533.23.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR UNJUST ENRICHMENT

62. Plaintiff repeats and realleges paragraphs 1 through 61 as if fully set forth herein.

63. At Defendant's insistence and request, Plaintiff provided good and valuable services to Defendant to aid in their foreign military sales campaign.

64. The fair and reasonable value of the benefit conferred on Defendant was equal to $171,533.23.

65. Despite demands, Defendant has failed to pay Plaintiff for the reasonable value of those services and has, as a result, been unjustly enriched in the amount of $171,533.23.

WHEREFORE, Plaintiff demands judgment against Defendant on its causes of action for breach of contract, account stated and unjust enrichment, in the sum of One Hundred Seventy One Thousand Five Hundred Thirty Three and 23/100 Dollars ($171,533.23), together with pre-judgment statutory interest from the date of default and such other and further relief as to the Court may seem just and proper.

2065415

DATED:   December 12, 2019
         Albany, NY

                              Yours, etc.

                              LIPPES MATHIAS WEXLER FRIEDMAN LLP

                              By: _____
                              Conor E. Brownell
                              Sean M. O'Brien
                              Attorneys for Plaintiff
                              54 State Street, Suite 1001
                              Albany, NY 12207
                              (518) 462-0110
                              cbrownell@lippes.com

2065415