**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mercury Public Affairs LLC, | |
| Plaintiff, | |
| -against- | 19 Civ. 7518 (VSB) |
| Airbus Defence and Space, S.A.U., f/k/a Airbus Military and Airbus Defense and Space, Inc., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS THE AMENDED COMPLAINT

Jeff. E. Butler
Michael Lightfoot
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Tel: 212-878-8000
Fax: 212-878-8375

*Attorneys for Airbus Defence and Space,*
*S.A.U.*

Dated: January 16, 2020

# TABLE OF CONTENTS

Page

Introduction.................................................................................................................... 1

Factual Background ........................................................................................................ 1

Argument ........................................................................................................................ 4

I.    ADSS IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK. ................. 4

II.   THIS ACTION SHOULD BE DISMISSED BECAUSE MERCURY AGREED TO
     ARBITRATE THIS DISPUTE. ........................................................................... 8

Conclusion ...................................................................................................................... 9

# TABLE OF AUTHORITIES

## Cases

*Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*,
   No. 06 Civ. 13009 (PAC), 2007 WL 2757116 (S.D.N.Y. Sept. 21, 2007) ................................ 4

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ........................................................................................................ 4

*Briese Lichttechnik Vertriebs GmbH v. Langton*,
   No. 09 Civ. 9790 (LTS)(MHD), 2012 WL 5457681 (S.D.N.Y. Nov. 8, 2012) ........................ 4

*Buckeye Check Cashing Inc. v. Cardegna*,
   546 U.S. 440 (2006).................................................................................................................... 8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).................................................................................................................... 5

*Citigroup, Inc. v. City Holding Co.*,
   97 F. Supp. 2d 549 (S.D.N.Y. 2000) ......................................................................................... 4

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).................................................................................................................... 8

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987) ...................................................................................................... 8

*Hanson v. Denckla*,
   357 U.S. 235 (1958).................................................................................................................... 5

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
   893 F. Supp. 1251 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1996)............................... 4-5

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945).................................................................................................................... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)........................................................................................................................ 8

*National City Golf Finance v. Higher Ground Country Club Mgmt. Co.*,
   641 F. Supp. 2d 196 (S.D.N.Y. 2009) ....................................................................................... 9

*Porina v. Marward Shipping Co., Ltd.*,
   521 F.3d 122 (2d Cir. 2008) ...................................................................................................... 5

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
  450 F.3d 100 (2d Cir. 2006) ................................................................................ 4

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) ............................................................................................ 5

**Statutes and Rules**

9  U.S.C. § 2 .......................................................................................................... 8

N.Y. C.P.L.R. 302 ................................................................................................... 4

Airbus Defence and Space, S.A.U. ("ADSS") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint filed by Mercury Public Affairs LLC ("Mercury").

## Introduction

This is an action for breach of contract to recover fees and expenses allegedly owing to Mercury. It should be dismissed for two reasons. First, ADSS is not subject to personal jurisdiction in New York. Second, the alleged contract at issue contains an arbitration clause requiring arbitration of this dispute in Washington, DC.

## Factual Background

Mercury initiated this action by filing a Complaint against ADSS and its affiliate, Airbus Defense and Space, Inc. ("ADSI").[1] As alleged in the Complaint, Mercury is a Delaware corporation with its principal place of business in New York. (Compl. ¶ 2.) ADSS is a Spanish corporation with its principal place of business in Madrid, Spain. (*Id.* ¶ 3.) ADSI is a Delaware corporation with its principal place of business in Virginia. (*Id.* ¶ 4.)

The Complaint alleges that, in 2013, ADSS and ADSI hired Mercury to assist them in selling the Airbus Transport and Mission Aircraft (the "Aircraft") to the United Nations and to certain African nations. (*Id.* ¶¶ 10-11.) This "verbal arrangement" was memorialized in a draft contract between Mercury and ADSI that was forwarded to Mercury in June 2014. (*Id.* ¶ 18.) Mercury executed the draft contract, but it was never countersigned by ADSI. (*Id.* ¶¶ 21-22.)

As alleged in the Complaint, from late 2013 to August 2014, Mercury met with government officials to further the goal of selling the Aircraft. (*Id.* ¶ 13.) The Complaint alleges

---

[1] Airbus Defense and Space, Inc. has changed its name to Airbus U.S. Space & Defense, Inc.

that a substantial number of such meetings took place at the United Nations headquarters in New York City, and that "behind the scenes" support work took place at the offices of Mercury in New York City.  (Id. ¶¶ 14-15.)  The Complaint does not allege that ADSS or ADSI participated in these meetings.

Mercury claims that it was not paid for work done on behalf of ADSS and ADSI pursuant to the terms of the draft contract.  The Complaint seeks to recover $171,533.23 in fees and expenses based on claims of breach of contract, account stated and unjust enrichment.

The draft contract is attached as Exhibit 1 to the Complaint.  The draft contract requires any dispute between the parties to be resolved by arbitration in Washington DC under the Rules of the International Chamber of Commerce.  Sections 12.2 and 12.3 of the draft contract state as follows:

> 12.2  The Parties shall attempt to reach an amicable settlement of all claims, controversies or disputes arising out of or in connection with any threatened, alleged or actual breach of this Agreement by either Party (a "Dispute") within 30 (thirty) days of receipt of notice of a dispute by one Party to the other. Any Dispute that is not so amicably settled shall be finally resolved exclusively through arbitration as hereinafter set forth.

> 12.3  Any Dispute which is not resolved as provided above shall be referred to and finally resolved by arbitration under the rules of the International Chamber of Commerce ("ICC"). Arbitration shall be conducted under the auspices of three arbitrators. Each Party may appoint an arbitrator to the panel and the two arbitrators selected by the Parties shall together agree on the appointment of a third arbitrator.

Section 12.4.1 states that "[t]he arbitration shall take place in Washington, DC area unless otherwise mutually agreed."

 On November 22, 2019, ADSS and ADSI moved to dismiss the Complaint on three grounds.  First, ADSS and ADSI argued that there was no complete diversity in this action because both Mercury and ADSI are Delaware entities.  Second, ADSS and ADSI argued that

the Complaint should be dismissed in favor of arbitration in Washington, DC, as required by the draft contract.  Third, ADSS and ADSI argued that the Complaint fails to allege a sufficient basis for personal jurisdiction, as the Complaint does not allege any conduct of ADSS or ADSI directed at the State of New York.

Rather than oppose the motion to dismiss, Mercury filed an Amended Complaint on December 12, 2019.  The allegations and claims in the Amended Complaint mirror those of the initial Complaint, but certain changes were made to address arguments made in the motion to dismiss.  Most significantly, the Amended Complaint omits ADSI as a defendant, thereby eliminating the problem of complete diversity.  The Spanish entity, ADSS, is now the sole named defendant in this action.

The Amended Complaint also adds an allegation to bolster the argument for personal jurisdiction over ADSS in New York.  As in the original Complaint, the Amended Complaint alleges that Mercury met with government officials at the United Nations headquarters.  (Am. Compl. ¶¶ 14-15.)  The Amended Complaint now adds that "Defendant's employees often attended those meetings with Plaintiff at the United Nations headquarters in New York City, State of New York."  (*Id.* ¶ 16.)  Apart from this new allegation, there is no allegation of conduct by ADSS directed at the State of New York.

The Amended Complaint also tweaks the allegations concerning the draft contract.  First, whereas the Complaint alleged that the draft contract forwarded to Mercury "memorialized the terms of their verbal arrangement," the Amended Complaint alleges that the draft contract memorializes only "the payment terms of the Agreement."  (*Compare* Compl. ¶ 18 *with* Am. Compl. ¶ 21.)  Second, whereas the Complaint alleged that Mercury "executed the Contract" on or about June 9, 2014, the Amended Complaint alleges that Mercury "executed and returned an

edited version of the Unsigned Contract." (*Compare* Compl. ¶ 21 *with* Am. Compl. ¶ 26.)  There is no indication, however, of how or why the draft contract was edited prior to execution by Mercury.  The draft agreement attached as Exhibit 1 to the Amended Complaint appears to be identical to the draft agreement attached to the Complaint.

**Argument**

**I.     ADSS IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK.**

This action should be dismissed because ADSS is not subject to personal jurisdiction in New York.  In diversity cases, federal courts determine whether or not to exercise personal jurisdiction over a foreign party based on (i) the long arm statute of the state in which they sit and (ii) the federal constitutional limits of due process.  *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).  Under either test, ADSS is not subject to personal jurisdiction in New York for purposes of this action.

"Under New York's long-arm statute, CPLR § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary where: (1) the non-domiciliary defendant transacts business within New York; and (2) the claim against the non-domiciliary defendant arises directly out of this activity." *Briese Lichttechnik Vertriebs GmbH v. Langton*, No. 09 Civ. 9790 (LTS)(MHD), 2012 WL 5457681, *2 (S.D.N.Y. Nov. 8, 2012); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).  In order to exercise personal jurisdiction there must a strong nexus between the plaintiff's cause of action and the defendant's instate conduct.  *See Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 564 (S.D.N.Y. 2000). "The appropriate focus of an inquiry under CPLR 302(a)(1) is on what the non-domiciliary defendant did in New York and not on what the Plaintiffs did." *Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, No. 06 Civ. 13009 (PAC), 2007 WL 2757116, at *4 (S.D.N.Y. Sept. 21, 2007) (quoting *Int'l Customs*

*Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1996).

Even if, contrary to fact, the allegations in this case satisfied the New York long-arm statute, Mercury would still need to demonstrate that the exercise of personal jurisdiction comports with due process.  The Due Process Clause prevents a court from exercising jurisdiction over a defendant unless the defendant has "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  This depends on the conduct of the defendant, not the plaintiff.  As set forth in *Hanson v. Denckla*, 357 U.S. 235, 253 (1958):

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.  The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

The defendant's contacts with the forum state cannot be merely haphazard or attenuated; they must be such that the defendant should "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, at 474-75 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see also Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008).

Here, the Amended Complaint fails to allege minimum contacts between ADSS and the State of New York.  As noted, this action arises from an alleged contract involving Mercury and ADSS.  There is no allegation, however, that the contract was negotiated or executed in New York.  To the contrary, the draft contract attached as Exhibit 1 to the Amended Complaint indicates that ADSS was dealing with the Washington, DC office of Mercury.  For example, the

opening paragraph indicates that Mercury is a company "having its registered office at The Portrait Building, 701 8th Street, NW, Suite 650, Washington, DC 2001." (Am. Compl. Ex. 1 at 3.)  Notices under the draft contract are required to be sent to Mercury in Washington, DC and Tampa, Florida. (*Id.* at 16.)  In the event of a dispute, the draft contract calls for arbitration "in the Washington, DC area." (*Id.* at 18.)  Finally, the agreement appears to have been executed by Mercury in Tampa, Florida, not in New York. (*Id.* at 20.)

In addition, the terms of the draft contract do not indicate that ADSS was directing its activities to New York.  The purpose of the draft contract was to retain Mercury to assist in a commercial campaign to sell the Aircraft to "[v]arious foreign governments" that are "eligible to participate in the U.S. Foreign Military Sales program." (*Id.* at 21.)  There is no indication, either in the Amended Complaint or the draft contract itself, that ADSS was seeking to sell the Aircraft to any New York resident.

The Amended Complaint alleges that ADSS employees attended meetings with Mercury and potential customers at the United Nations headquarters in New York City. (Am. Compl. ¶ 16.)  The United Nations headquarters district, however, is not an ordinary part of the State of New York.  It has special status under international law.  The Agreement regarding the Headquarters of the United Nations (the "UN Headquarters Agreement") specifies that "[t]he headquarters district shall be under the control and authority of the United Nations as provided in this agreement." (Art. II, s. 7.)  It also states:  "No federal, state or local law or regulation of the United States which is inconsistent with a regulation of the United Nations authorized by this section shall, to the extent of such inconsistency, be applicable within the headquarters district." (Art. III, s. 8.)  Furthermore, the Convention on the Privileges and Immunities of the United Nations (the "General Convention") states:

> The premises of the United Nations shall be inviolable.  The property and assets of the United Nations, wherever located and by whomsoever held, shall be immune from search, requisition, confiscation, expropriation and any other form of interference, whether by executive, judicial or legislative action.

(Art. 11, s. 3.)  As a result of these arrangements, the State of New York does not have control or authority over the headquarters district, and ordinary New York law does not apply in the headquarters district.[2]  For these reasons, attending meetings in the UN headquarters district is not equivalent to invoking the benefits and protections of New York law.

Assuming, for purposes of argument, that attending a meeting at the UN headquarters is that same as attending a meeting elsewhere in New York City, the meetings alleged in the Amended Complaint still do not satisfy the minimum contacts test.  There is no indication that Mercury and ADSS were meeting New York residents.  The Amended Complaint indicates they were meeting with "government officials" associated with either the UN itself or "certain African nations."  (*See* Am. Compl. ¶¶ 11-12, 14.)  Thus, it appears to have been mere happenstance that such meetings took place within the borders of New York City.  Such contacts are too attenuated to suggest that ADSS was purposefully invoking the privilege of conducting activities in New York.

In sum, the allegations in the Amended Complaint are not sufficient to establish the existence of personal jurisdiction over ADSS.  For that reason alone, this action should be dismissed.

---

[2] It is possible that *some* New York law applies in the UN headquarters district.  The UN Headquarters Agreement states:  "Except as otherwise provided in this Agreement or in the General Convention, the federal, state and local law of the United States shall apply within the headquarters district."  (Art. III, s. 7(b).)  However, given what is "otherwise provided" in the UN Headquarters Agreement and in the General Convention, it is unclear what, if any, New York law applies to activities in the headquarters district.

## II.     THIS ACTION SHOULD BE DISMISSED BECAUSE MERCURY AGREED TO ARBITRATE THIS DISPUTE.

This dispute arises from an alleged contract entered by Mercury for the provision of consulting services.  The contract at issue—attached as Exhibit 1 to the Amended Complaint—contains a broad arbitration clause.  Specifically, Section 12.3 requires any dispute between the parties to be resolved by arbitration in Washington, DC under the rules of the International Chamber of Commerce.  This provision of the alleged contract should be enforced and, accordingly, this action should be dismissed.

The Federal Arbitration Act states that arbitration agreements shall be enforceable. 9  U.S.C. § 2.  This implements a congressional policy favoring arbitration.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983) (describing the Federal Arbitration Act as a "congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"); *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (noting that the Federal Arbitration Act "embodies the national policy favoring arbitration").  Consistent with this policy, federal courts direct parties to proceed to arbitration where there is an express arbitration clause*.  See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)  (holding that the Federal Arbitration Act's language "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (same).

Here, there can be no doubt that Mercury agreed to arbitrate the claims set forth in the Amended Complaint.  The draft contract signed by Mercury is attached as Exhibit 1 to the Amended Complaint.  It makes no difference that ADSS did not sign the draft contract.  *See*

*National City Golf Finance v. Higher Ground Country Club Mgmt. Co.*, 641 F. Supp. 2d 196, 203 (S.D.N.Y. 2009) (collecting cases).  Moreover, the Amended Complaint offers no reason to disregard the broad arbitration clause to which Mercury agreed.  Accordingly, this action should be dismissed in favor of arbitration in Washington, DC.

### Conclusion

For all the foregoing reasons, this action should be dismissed.  Given that Mercury has had the opportunity to amend its complaint to address the arguments made in this motion, the dismissal should be with prejudice.

Dated: January 16, 2020
            New York, New York

Respectfully submitted,

  s/  Jeff E. Butler
Jeff E. Butler
Michael Lightfoot
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Tel: 212-878-8000
Fax: 212-878-8375

*Attorneys for Airbus Defence and Space, S.A.U.*