UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Mercury Public Affairs LLC,

                              Plaintiff,

v.

                                                      Civil Action, File No. 19-7518 (VSB)

Airbus Defence and Space, S.A.U., f/k/a Airbus Military,
                              Defendant.

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

Conor E. Brownell, Esq.
Sean M. O'Brien, Esq.
**LIPPES MATHIAS WEXLER FRIEDMAN LLP**
**54 State Street**
**Albany, NY 12207**
**Tel: 518-462-0110**
**Fax: 518-462-5260**

**January 30, 2020**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Facts ................................................................................................ | 1 |
| Argument ......................................................................................... | 3 |
| I. ADSS's CONTACTS WITH NEW YORK ARE SUFFICIENT TO ESTABLISH PERSONAL JURISDICTION ................................................. | 3 |
| II. THE ARBITRATION PROVISION IN THE UNSIGNED CONTRACT IS NOT ENFORCEABLE ............................................................... | 7 |
| Conclusion ....................................................................................... | 11 |

# TABLE OF AUTHORITIES

CASES

Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 [2d Cir. 1996]
(quoting Sacody Techs., Inc. v. Avant, Inc., 862 F. Supp. 1152, 1155 [S.D.N.Y. 1994]) ..........7

Am. Lecithin Co. v. Rebmann, 2017 WL 4402535, at *5 [S.D.N.Y. Sept. 30, 2017] ................3

Anders v. Verizon Commc'ns Inc., 2018 WL 2727883, at *5 [S.D.N.Y. June 5, 2018],
reconsideration denied, 2018 WL 6605200 [S.D.N.Y. Dec. 17, 2018],
appeal dismissed [May 16, 2019] ............................................................................................3

Ashcroft v. Iqbal, 556 U.S. 662, 677 [2009] ................................................................................10

Ball v. Metallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 [2d Cir. 1990] ........................3

Chatwal Hotels & Resorts LLC v. Dollywood Co., 90 F. Supp. 3d 97, 108 [S.D.N.Y. 2015] ...3

CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 368 [2d Cir. 1986] .............................................4

George v. Lebeau, 2005 WL 1639415 [SDNY 2005] ..................................................................8

Hadjioannou v. Avramides, 40 N.Y.2d 929, 931 [1976] .............................................................8

Johnson v. Ward, 4 NY3d 516, 519 [2005] ..................................................................................4

Khan v. Emerald Operating Partners, LLC, 2020 WL 85387, at *3 [S.D.N.Y. Jan. 2, 2020] .....4

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro
in Amministrazione Straordinaria, 795 F. Supp. 112, 114 [S.D.N.Y. 1992] ..............................6

Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 [2d Cir. 2003].....................................3

Matter of Application of Pana-Oro v. Johnson Matthey Florida, Inc.Eyeglasses,
1986 WL 2791 [SDNY 1986] ....................................................................................................8

National City Golf Finance v Higher Ground Country Club Mgmt. Co.,
(641 FSupp2d 196, 203 [SDNY 2009]) .....................................................................................9

O'Mahoney v. Susser, 531 F. App'x 39, 41 [2d Cir. 2013] ..........................................................4

Parke-Bernet Galleries, Inc. v. Franklyn, 26 NY2d 13, 18, 256 N.E.2d 506 [1970] ..................5

Paylogix LLC v. Benefitfocus Inc., 2019 WL 498276, at *2 [S.D.N.Y. Feb. 8, 2019] ...............3

Roxx Allison Ltd. v. Jewelers Inc., 385 F. Supp. 3d 377, 382 [S.D.N.Y. 2019].........................5

Sygall v. Pitsicalis, 2018 WL 5981994, at *2 [S.D.N.Y. Nov. 14, 2018] ..................................4

Three Five Compounds, Inc. v. Scram Techs., Inc., 2011 WL 5838697,
at *10 [S.D.N.Y. Nov. 21, 2011] ..............................................................................................5

Waldron v. Goddess, 61 NY2d 181, 183 [1984][quoting Schubtex, Inc. v. Allen
Snyder, Inc., 49 N.Y.2d 1, 6 [1979] .........................................................................................8

Wilhelmshaven Acquisition Corp. v. Asher, 810 F.Supp. 108, 114–15 [S.D.N.Y. 1993] ..........7

Winner v. Tryko Partners, LLC, 333 F. Supp. 3d 250, 260 [W.D.N.Y. 2018] ...........................4

**STATUTES**

N.Y. CPLR § 302(a) ..................................................................................................................4

Federal Rules of Civil Procedure 9(b) .....................................................................................12

Mercury Public Affairs, LLC ("Mercury") submits this Memorandum of Law in Opposition to Defendant Airbus Defence and Space, S.A.U. ("ADSS")'s Motion to Dismiss Mercury's Amended Complaint.

## FACTS

In April 2013, Mercury, a company in the business of providing, among other things, government and foreign affairs consulting services, entered into a verbal contract with ADSS in which ADSS hired Mercury to assist ADSS in selling its military aircraft ("the Agreement") (Compl. ¶ 10). More specifically, ADSS requested that Mercury use its knowledge and experience to aid ADSS in selling the aircrafts to the United Nations and to certain African countries (Compl ¶ 11, 12). The parties agreed that ADSS would compensate Mercury at the rate of $10,125.00 per month (Compl ¶ 13).

Thereafter, for the rest of 2013 and through August of 2014, Mercury dedicated substantial time and resources to facilitate ADSS's military sales initiative (Compl. ¶ 14). As part of that work, Mercury, along with ADSS employees met with officials on numerous occasions at the U.N. in New York City (Compl ¶ 15, 16). Mercury also met several times with ADSS employees to discuss the sale of ADSS's military aircrafts at the W Hotel in New York City (Morris Reid Affidavit at ¶ 3,4). In addition, ADSS was aware that Mercury performed the support work to bring about the U.N. meetings out of its office in New York City (Compl. ¶ 18).

On or about June 2014, ADSS forwarded a written but unsigned contract (the "Unsigned Contract") to Mercury and indicated that under its internal process and procedures, because Mercury was a U.S. service provider, it must contract with a U.S. Airbus entity. Consequently, EADS North America, which according to ADSS's motion papers is now apparently known as

1

Airbus U.S. Space & Defense, Inc. ("ADSI"), was listed as the contracting entity along with Mercury (Compl. ¶ 21, 22; Exhibit 1). In June 2014, Mercury made changes to the Unsigned Contract and returned it to ADSI (Compl. ¶ 26). Neither ADSI or ADSS ever executed the Unsigned Contract (Compl ¶ 27).

In August 2014, having received $0.00 in payments from ADSS or ADSI for the services it rendered under the Agreement, Mercury ceased doing any further work for ADSS (Compl. ¶ 28). Although ADSS never once objected to Mercury's services or the invoices it remitted, and in fact was complimentary of the services Mercury provided (Compl ¶ 42), ADSS did not immediately make payment to Mercury citing the need to conduct an internal "due diligence" review of its vendors (Compl. ¶ 30). In November 2015, ADSS sent to Mercury a document it called "Settlement Proposal to Mercury" for a total of $171,533.23, and requested that Mercury issue it three separate invoices, one for billing in 2013, one for billing in 2014 and one for reimburseable expenses (Compl. ¶ 34; Exhibit 3). Mercury accepted ADSS' proposal and sent the invoices to ADSS (Compl. ¶ 35; Exhibit 4). Despite its verbal and written promises of payment, on July 25, 2017, ADSS sent a letter to Mercury stating that no payment would be forthcoming (Compl. ¶ 38; Exhibit 7). ADSS did not articulate any reason for the non-payment beyond a vague reference to its "due diligence" review (Compl ¶ 39, 40; Exhibit 7).

As a result of ADSS's non-payment, Mercury initially commenced the instant action against both ADSS and ADSI. Following service upon the two entities, both ADSI and ADSS moved to dismiss Mercury's complaint on the grounds that (1) the Court lacked subject matter jurisdiction, (2) Mercury agreed to arbitrate the dispute, and (3) ADSS and ADSI were not subject to personal jurisdiction in New York. Mercury subsequently amended its complaint to, among other things, drop ADSI from the lawsuit. ADSS now again moves to dismiss the

2

amended complaint on the grounds that (1) Mercury agreed to arbitrate the dispute and (2) ADSS is not subject to personal jurisdiction in New York.

## ARGUMENT

### I. ADSS'S CONTACTS WITH NEW YORK ARE SUFFICIENT TO ESTABLISH PERSONAL JURISDICTION

For the purposes of a motion made pursuant to Fed. R. Civ. P. 12(b)(2), the Court must credit a plaintiff's averments of jurisdiction as true (In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 [2d Cir. 2003] [citing Ball v. Metallurgie Hoboken–Overpelt, S.A., 902 F.2d 194, 197 [2d Cir. 1990]). To that end, in considering motions to dismiss pursuant to Rule 12(b)(2), the court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether it has jurisdiction (Paylogix LLC v. Benefitfocus Inc., 2019 WL 498276, at *2 [S.D.N.Y. Feb. 8, 2019]).

To assess personal jurisdiction when sitting in diversity, the court must engage in a two-part inquiry. First, a court determines whether it has personal jurisdiction over a defendant based on the long-arm statute of the state in which it sits (see Anders v. Verizon Commc'ns Inc., 2018 WL 2727883, at *5 [S.D.N.Y. June 5, 2018], reconsideration denied, 2018 WL 6605200 [S.D.N.Y. Dec. 17, 2018], appeal dismissed [May 16, 2019]; Am. Lecithin Co. v. Rebmann, 2017 WL 4402535, at *5 [S.D.N.Y. Sept. 30, 2017]). Second, if the long arm-statute permits jurisdiction, the Court determines "whether asserting jurisdiction under that [law] would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." (Id).

CPLR § 302(a) provides that a court may exercise jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts

anywhere to supply goods or services in the state; or ... commits a tortious act within the state." (N.Y. CPLR § 302(a); Sygall v. Pitsicalis, 2018 WL 5981994, at *2 [S.D.N.Y. Nov. 14, 2018]). As New York's long-arm statute is more restrictive than the federal due process requirements, courts generally find that by virtue of satisfying the long-arm statute, the minimum contacts and reasonableness requirements of due process will also be satisfied (see, e.g., Chatwal Hotels & Resorts LLC v. Dollywood Co., 90 F. Supp. 3d 97, 108 [S.D.N.Y. 2015]).

Plaintiff asserts jurisdiction pursuant to CPLR § 302(a)(1), which provides in relevant part:

> as to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state.

CPLR § 302(a)(1). As the New York Court of Appeals has held, "long-arm jurisdiction over a nondomiciliary exists where: (i) a defendant transacted business within the state; and (ii) the cause of action arose from that transaction of business (Johnson v. Ward, 4 NY3d 516, 519 [2005]).

### (i)   *ADSS transacted business in New York*

It is well-established that attendance at business meetings in New York with the purpose of transacting business related to the parties' relationship or subsequent lawsuit is sufficient for a *prima facie* showing that a defendant "transacted business" in New York (see, e.g., O'Mahoney v. Susser, 531 F. App'x 39, 41 [2d Cir. 2013]; CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 368 [2d Cir. 1986]; Khan v. Emerald Operating Partners, LLC, 2020 WL 85387, at *3 [S.D.N.Y. Jan. 2, 2020]; Winner v. Tryko Partners, LLC, 333 F. Supp. 3d 250, 260 [W.D.N.Y. 2018]).

As articulated in the Amended Complaint and the Affidavit of Morris Reid, the parties scheduled and participated in several meetings in New York City (both at the United Nations and other places in New York) relating to their relationship and the contract in question in this

4

lawsuit. ADSS availed itself to the jurisdiction of New York by conducting business with Mercury in multiple meetings that took place in New York. At the bare minimum, Mercury was effectively engaged as ADSS's agent to achieve the goal of the Agreement, selling airplanes to the U.N. (see Parke-Bernet Galleries, Inc. v. Franklyn, 26 NY2d 13, 18, 256 N.E.2d 506 [1970]).

Moreover, Mercury is licensed in New York, has an office in New York, and as alleged in the Amended Complaint, performed activities pursuant to the Agreement in New York over the life of the Agreement, which existed for approximately fourteen (14) months. Put differently, the parties' relationship tethered ADSS to Mercury's continuous activity in New York such that ADSS in effect participated in Mercury's transaction of business (see Roxx Allison Ltd. v. Jewelers Inc., 385 F. Supp. 3d 377, 382 [S.D.N.Y. 2019; Three Five Compounds, Inc. v. Scram Techs., Inc., 2011 WL 5838697, at *10 [S.D.N.Y. Nov. 21, 2011]). Accordingly, the Amended Complaint and supporting Affidavit of Mr. Reid allege sufficient facts to establish ADSS was indeed transacting business in New York.

ADSS's opposition argues at length that as certain meetings occurred within the confines of the United Nations headquarters, those meeting cannot be considered in the Court's analysis. At the outset, the Affidavit of Morris Reid demonstrates that several meetings occurred not only at the United Nations headquarters, but at other locations in New York (Reid Aff., ¶¶ 2-3). ADSS's argument is, therefore, moot.

Regardless, ADSS does not contend it is a member of the United Nations or that it was engaging in United Nations-sanctioned activities during the meetings. Instead, ADSS argues, without citing to a single case, that because non-United Nations activities happened to take place within the United Nations' building, they somehow are exempt from jurisdictional analysis. However, the correct analysis for the Court should focus on the substance of the contact as

United Nations-related or not, not its specific location within the state of New York (see Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 795 F. Supp. 112, 114 [S.D.N.Y. 1992]). Conducting business that is not related to United Nations activity but happens to occur at the United Nations does not forbid jurisdiction. As correctly noted by ADSS's own motion, "the appropriate focus of an inquiry under CPLR 302(a)(1) is on what the non-domiciliary did in New York . . . ." (Dkt. 26, p. 8).

Simply put, the Amended Complaint and supporting Affidavit of Mr. Reid allege sufficient facts to establish ADSS was transacting business in New York within the purview of the Long Arm Statute.

*(ii)    The claims in the complaint arise from the transaction of business in New York*

The Amended Complaint and supporting Affidavit of Mr. Reid allege sufficient facts to establish that the claims in the Amended Complaint arose from the transaction of business in New York. ADSS's motion misses that point, arguing instead that because: (1) the April 2013 Agreement was not negotiated or executed in New York[1]; and (2) the parties were not seeking to sell aircraft to a New York resident, any contact with the State of New York is unrelated to this lawsuit.

A claim "arises out of" a defendant's transaction of business in New York "when there exists 'a substantial nexus' between the business transacted and the cause of action sued upon" (Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 [2d Cir. 1996] (quoting Sacody Techs., Inc. v. Avant, Inc., 862 F. Supp. 1152, 1155 [S.D.N.Y. 1994]);

---

[1] Notably, the Amended Complaint does not allege a breach of the Unsigned Contract signed in Tampa. Instead, it alleges a breach of the separate Agreement the parties entered into in 2013.

Wilhelmshaven Acquisition Corp. v. Asher, 810 F.Supp. 108, 114–15 [S.D.N.Y. 1993] [meetings over two days in New York, which meetings had substantial connection to an alleged breach of contract was sufficient to confer jurisdiction under § 302(a)(1)]).

Mr. Reid's Affidavit makes clear that the meetings in New York were in furtherance of Mercury's continued and ongoing efforts to aid and act as agent for ADSS in its military aircraft sales campaign, which formed the very basis of and were essential to the Agreement and the business transacted between the parties. The meetings in New York were held specifically for the purpose of performing pursuant to the Agreement – the central dispute in this lawsuit (Reid Aff., ¶ 4). As a result, the Amended Complaint and supporting Affidavit of Mr. Reid allege sufficient facts to establish ADSS's business transactions with Mercury in New York are central to the issue in this lawsuit, whether Mercury is entitled to compensation for its work on behalf of ADSS pursuant to the Agreement, bringing ADSS within the purview of the Long Arm Statute.

## II. THE ARBITRATION PROVISION IN THE UNSIGNED CONTRACT IS NOT ENFORCEABLE

ADSS next argues that the amended complaint should be dismissed because Section 12.3 of the Unsigned Contract requires Mercury to arbitrate the claims set forth in its amended complaint. However, for the reasons that follow, ADSS's argument is flawed and its motion to dismiss the amended complaint on this basis should be denied.

"It is settled that a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent 'evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes.' The agreement must be clear, explicit and unequivocal and must not depend upon implication or subtlety" (Waldron v. Goddess, 61 NY2d 181, 183 [1984][quoting Schubtex, Inc. v. Allen Snyder, Inc., 49 N.Y.2d 1, 6 [1979]). Critically, "the Waldron Court's primary holding was that that plaintiff could not seek arbitration against

another employee who was not a party to that plaintiff's employment contract" (George v. Lebeau, 2005 WL 1639415 [SDNY 2005][emphasis supplied]).

Here, the proposed parties to the Unsigned Contract containing the arbitration provision are Mercury and ADSI. ADSS is not a proposed party to the Unsigned Contract. Mercury's amended complaint contains claims only against ADSS based upon (1) ADSS's breach of the April 2013 verbal agreement between the parties, (2) ADSS's breach of the November 15, 2015 settlement proposal, (3) ADSS's failure to object to Mercury's account statements, and (4) the fair and reasonable value of Mercury's services. There are no claims that ADSI or ADSS breached the Unsigned Contract, or the arbitration provision contained therein.

There is, likewise, no claim that Mercury operated to perform its services for ADSS under the terms of the Unsigned Contract. In fact, at the time ADSI forwarded the Unsigned Contract, Mercury had been performing services for ADSS for fourteen (14) months under the Agreement. Consequently, there is no merit to ADSS's claim that Mercury agreed to arbitrate the claims in the amended complaint (see Matter of Application of Pana-Oro v. Johnson Matthey Florida, Inc.Eyeglasses, 1986 WL 2791 [SDNY 1986]; Waldron, supra; Hadjioannou v. Avramides, 40 N.Y.2d 929, 931 [1976] [Court holds that mere reference in a contract between A and B, which contains no arbitration clause, to an agreement between B and C, which has an arbitration, does not require arbitration of disputes between A and B]).

The National City Golf Finance v Higher Ground Country Club Mgmt. Co., (641 FSupp2d 196, 203 [SDNY 2009]) cited by ADSS is easily distinguishable. In National City, the Court compelled arbitration in a third party claim even though a signed contract between the two parties was never produced. However, in National City, unlike in this case, the unsigned contract containing the arbitration clause was by and between the two parties to the third-party

action. Additionally, the Unsigned Contract that was forwarded by ADSI was edited by Mercury changing some of the terms and there is no proof by ADSS that it or ADSI ever intended to be bound by that Unsigned Contract or the arbitration provision contained therein.

Moreover, dismissing Mercury's complaint in favor of arbitration could cause a completely inequitable result by leaving Mercury without any forum to redress its grievance with ADSS. In particular, ADSS is not moving to compel arbitration and there is nothing in its papers that suggests it would agree to arbitration, only that Mercury's complaint should be dismissed. Therefore, if Mercury were to file an arbitration claim under 12.3 and 12.4 of the Unsigned Contract, ADSS could reject any claim that it is compelled to arbitrate on the basis that it is not a party to the Unsigned Contract. ADSI could similarly claim that it would not be bound to arbitrate as it never executed the Unsigned Contract.

Even if the Court finds, *arguendo*, that Mercury agreed to arbitrate, Mercury argues in the alternative that the claims presented by the amended complaint do not fall within the scope of the Unsigned Contract's arbitration provision. Specifically,

Section 12.2 provides:

> The parties shall attempt to reach an amicable settlement of all claims, controversies or disputes arising out of or in connection with any threatened, alleged or actual breach of this Agreement by either Party ("a Dispute") within 30 (thirty) days of receipt of notice of a dispute one Party to the other. Any Dispute that is no so amicably settled shall be finally resolved exclusively through arbitration as hereinafter set forth.

Section 12.3 provides:

> Any Dispute which is not resolved as provided above shall be referred to and finally resolved by arbitration under the rules of the International Chamber of Commerce ("ICC"). Arbitration shall be conducted under the auspices of three arbitrators. Each Party may appoint an arbitrator to the panel and the two arbitrators selected by the Parties shall together agree on the appointment of a third arbitrator.

9

Here, the amended complaint, whose claims must be accepted as true for the purposes of this motion (see Ashcroft v. Iqbal, 556 U.S. 662, 677 [2009]), alleges that ADSS was complimentary of Mercury's services (Compl ¶ 42), and never objected to Mercury's performance or any of the invoices it rendered (Compl ¶ 41). More importantly, as discussed in Section 12.2 above, to the extent there ever was an issue with Mercury's work, the parties did reach an "amicable settlement of claims, controversies or disputes" by way of the November 15, 2017 "Settlement Proposal to Mercury," for the sum of $171,533.23, which proposal Mercury accepted (Compl ¶ 34, 35; Exhibit 3). ADSS's papers do not contain any explanation of another Dispute between the parties. Consequently, any Dispute was settled in accordance with Section 12.2, leaving no remaining issues or Dispute to arbitrate.

In sum, this action, which is to enforce collection of the monies ADSS agreed to pay in settlement of the services Mercury provided, simply does not invoke any of the provisions of the Unsigned Agreement's arbitration clause and ADSS' motion to dismiss on that basis should be denied. Should the Court find that it does, it is respectfully submitted that it should compel ADSS and ADSI to arbitrate as well in order to avoid the inequitable result discussed above.

## CONCLUSION

Based on all of the foregoing, it is respectfully submitted that ADSS' motion to dismiss lacks merit and should be denied in its entirety.

Dated: January 30, 2020

Albany, New York

                                      Respectfully submitted,

                                      Conor E. Brownell, Esq.
                                      Sean M. O'Brien, Esq.
                                      LIPPES MATHIAS WEXLER FRIEDMAN LLP
                                      *Attorneys for Plaintiff Mercury Public Affairs, LLC*
                                      54 State Street
                                      Albany, New York 12207
                                      Tel. 518-462-0110
                                      Fax. 518-462-5260