UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mercury Public Affairs LLC,<br><br>       Plaintiff,<br><br>-against-<br><br>Airbus Defence and Space, S.A.U., f/k/a Airbus Military and Airbus Defense and Space, Inc.,<br><br>       Defendants. | 19 Civ. 7518 (MKV) |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE AMENDED COMPLAINT**


                                                                         Jeff. E. Butler
                                                                         Michael Lightfoot
                                                                          CLIFFORD CHANCE US LLP
                                                                          31 West 52nd Street
                                                                          New York, New York 10019
                                                                          Tel: 212-878-8000
                                                                          Fax: 212-878-8375

                                                                          *Attorneys for Airbus Defence and Space, S.A.U.*

Dated: February 6, 2020

**TABLE OF CONTENTS**

Page

Introduction ............................................................................................................................1

Argument ...............................................................................................................................1

I.      THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER ADSS ........................................................................................1

II.     MERCURY SHOULD BE REQUIRED TO ARBITRATE THIS DISPUTE ....................4

Conclusion .............................................................................................................................7

## TABLE OF AUTHORITIES

### Cases

*Cooke v. United States*,
    918 F.3d 77 (2d Cir. 2019)..................................................................................................2

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)................................................................................................3

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
    386 F.3d 107 (2d Cir. 2004)................................................................................................2

*Khan v. Emerald Operating Partners, LLC*,
    No. 19 Civ. 9597 (JSR), 2020 WL 85387 (S.D.N.Y. Dec. 27, 2019).........................................3

*O'Mahoney v. Susser*,
    531 Fed. App'x 39 (2d Cir. 2013).........................................................................................3

*Three Five Compounds, Inc. v. Scram Technologies, Inc.*,
    No. 11 Civ. 1616 (RJH), 2011 WL 5838697 (S.D.N.Y. Nov. 21, 2011)...................................3

*United States Theatre Corporation v. Gunwyn/Lansburgh Ltd. Partnership*,
    825 F. Supp. 594 (S.D.N.Y. 1993).......................................................................................3

*Winner v. Tryko Partners, LLC*,
    333 F. Supp. 3d 250 (W.D.N.Y. 2018) ................................................................................4

### Statutes

DEL. CODE ANN. tit. 6, § 2714 ...............................................................................................6

N.Y. GEN. OBLIG. LAW § 5-701 .............................................................................................6

Airbus Defence and Space, S.A.U. ("ADSS") respectfully submits this Reply Memorandum in response to the Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Amended Complaint ("Opp.") filed by Mercury Public Affairs LLC ("Mercury").

## Introduction

The Amended Complaint does not allege facts sufficient to establish minimum contacts between ADSS and the State of New York.  The only contacts alleged are meetings involving ADSS employees at the UN headquarters that were not directed at any New York resident.  These alleged contacts are not sufficient to establish personal jurisdiction over ADSS.

Mercury tries to cure this defect by submitting a new factual affidavit from one of its partners.  The new affidavit, even if considered by the Court, does not change the analysis.  Mercury still has not alleged any activity by ADSS that was directed at a New York resident.  Accordingly, this action should be dismissed for lack of personal jurisdiction over ADSS.

This action also should be dismissed in favor of arbitration in Washington, DC.  Mercury claims that a written agreement memorializes the terms the agreement at issue, but the arbitration clause contained in the written agreement should not be enforced.  Mercury cannot have it both ways.  The Amended Complaint clearly alleges that the written agreement memorializes the terms of the agreement at issue.  Accordingly, Mercury should be bound by all the terms of that agreement, including the arbitration clause.

## Argument

**I. THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER ADSS.**

In its opening brief, ADSS argued that the Amended Complaint fails to allege contacts between ADSS and the State of New York sufficient to meet the "transacting business" test under Section 302 of the New York Civil Practice Law and Rules or the "purposeful availment"

test of Constitutional due process.  ADSS pointed out that the agreement in dispute was not negotiated or executed in New York, and the purpose of the agreement was to obtain assistance from Mercury in selling a military transport aircraft to foreign governments and the UN.  The Amended Complaint alleges that ADSS employees participated in meetings with government officials at the UN headquarters, but there is no allegation that this activity was directed at any New York resident.  Taking all circumstances into account, these allegations are insufficient to establish personal jurisdiction over ADSS for purposes of this case.

In response, Mercury submits an affidavit from one of its partners, Morris L. Reid, to supplement the allegations in the Amended Complaint.  (*See* Affidavit in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss the Amended Complaint ("Reid Aff.").)  Mr. Reid was "the partner in charge of [] providing the consulting services" to ADSS.  (*Id.* ¶ 1.)  In his affidavit, Mr. Reid states that, in addition to attending meetings at the UN headquarters, he also attended meetings with ADSS employees at the W Hotel on Lexington Avenue "to recap those U.N. meetings."  (*Id.* ¶ 3.)[1]

The affidavit from Mr. Reid is notable for what it does not say.  Mr. Reid does not say the agreement in this case was negotiated or executed in New York, and he does not dispute that the hiring of Mercury by ADSS centered on the Washington, DC office of Mercury.  Moreover, Mr. Reid does not provide any detail concerning the number of meetings involving ADSS or the

---

[1] Mercury does not explain why the information in the Reid Affidavit was not included in the Amended Complaint, which was filed after ADSS raised the issue of personal jurisdiction in its motion to dismiss the original Complaint. The Second Circuit has held that an affidavit submitted in opposition to a motion to dismiss may be considered "to resolve jurisdictional issues." *See Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019).  Such cases, however, have involved subject matter jurisdiction, not personal jurisdiction.  *See id.*; *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

exact timing of those meetings.  He merely offers that some "recaps" of the UN meetings took place at a nearby location in New York City.  (*See* Reid Aff. ¶¶ 3-4.)

The new information offered by Mr. Reid does not change the personal jurisdiction analysis.  It remains true that the contractual relationship at issue was not negotiated or formed in New York.  The only alleged contacts with New York were subsequent meetings associated with selling military transport aircraft to foreign governments and the UN.  An undetermined number of these meetings may have taken place on New York soil, but the fact remains that the meetings were not directed at any New York resident.  Such contacts are not sufficient to meet either the "transacting business" test or the "purposeful availment" test for personal jurisdiction.  *See United States Theatre Corporation v. Gunwyn/Lansburgh Ltd. Partnership*, 825 F. Supp. 594, 596 (S.D.N.Y.1993) ("Although a visit to the forum is a presumptively more significant contact than a phone call or a letter, it too must be 'purposeful' in order to sustain jurisdiction."); *Three Five Compounds, Inc. v. Scram Technologies, Inc.*, No. 11 Civ. 1616 (RJH), 2011 WL 5838697, at *4 (S.D.N.Y. Nov. 21, 2011) ("[T]here is nothing talismanic about a visit to New York.").

Tellingly, Mercury does not cite any case holding that such attenuated contacts are sufficient for the exercise of personal jurisdiction.  The cases cited by Mercury all involve more substantial activities by a defendant directed at a New York resident (or New York residents generally).  For example, in one case, the defendant solicited a loan from a New York resident through telephone calls and an in-person meeting.  *See O'Mahoney v. Susser*, 531 Fed. App'x 39, 41 (2d Cir. 2013).  In another case, there was evidence the defendant sent an agent to New York to negotiate the terms of a franchise arrangement with a New York company.  *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365–66 (2d Cir. 1986); *see also Khan v. Emerald Operating Partners, LLC*, No. 19 Civ. 9597 (JSR), 2020 WL 85387, at *3 (S.D.N.Y. Dec. 27, 2019)

(defendant was involved in "prolonged, repeated, deliberate attempts to build a business in New York"); *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 260 (W.D.N.Y. 2018) (defendant hired a New York resident). These cases involved allegations of substantial conduct by the defendant intentionally aimed at one or more New York residents. Here, in contrast, the alleged meetings involving ADSS related to potential business transactions with foreign governments and the UN.

Mercury also suggests that it was acting as an agent of ADSS. (Opp. 5, 7.) Under this theory, the actions of Mercury itself could be considered contacts between ADSS and the State of New York. This "agency" theory has no merit. *First*, the agreement at issue expressly disclaims any agency relationship. Section 3.1 states that Mercury shall not be deemed an agent and Section 3.2 states that Mercury shall not hold itself out as an agent. (*See* Am. Compl. Ex. 1.) *Second*, even if Mercury could be deemed an agent of ADSS, the only alleged acts in New York by Mercury were directed at foreign governments and the UN. Mercury, like ADSS, did not direct its activities at any New York resident.

II.     **MERCURY SHOULD BE REQUIRED TO ARBITRATE THIS DISPUTE.**

Mercury asks the Court to ignore the fact that it signed a written agreement with respect to the services at issue in this action, which is attached as Exhibit 1 to the Amended Complaint. The written agreement contains a broad arbitration clause requiring arbitration "in the Washington, DC area" of any claim arising in connection with any breach of the agreement. The written agreement also contains an integration clause stating that it "supersedes any previous agreement" between the parties concerning the services at issue. (*See* Am. Compl. Ex. 1, § 11.3.) Mercury refers to Exhibit 1 as the "Unsigned Contract" even though it plainly was signed by Mercury partner Kieren Mahoney in Tampa, Florida on June 19, 2014.

Mercury claims that this action is based only on an alleged verbal agreement with ADSS, not the written agreement with ADSS's affiliate, Airbus Defense and Space, Inc. ("ADSI"), that Mercury later signed.[2]  (Opp. 8.)  Mercury's position does not stand up to scrutiny.  Based on the allegations in the Amended Complaint, the alleged verbal agreement with ADSS and the written agreement signed by Mercury are not separate arrangements—they are a single, integrated agreement.  Paragraph 19 makes this clear by alleging that the parties were working together to develop a written agreement "to memorialize the terms" of their verbal arrangement.  More specifically, Paragraph 21 states that the written agreement attached as Exhibit 1 "among other things memorialized the payment terms" of the verbal agreement.  Significantly, both the verbal agreement and the written agreement are alleged to involve the *same services* performed by Mercury, namely, assistance in a sales campaign for a military transport aircraft.  (*Compare* Am. Compl. ¶¶ 10-11 *with id.* ¶ 24.)  For these reasons, the alleged verbal agreement with ADSS cannot be viewed as separate or independent from the written agreement signed by Mercury.  The written agreement and the verbal agreement are one and the same.

Mercury points out that ADSS itself is not a party to the written agreement.  (Opp. 8.)  That does not change the fact that Mercury should be bound by its terms.  The Amended Complaint alleges that ADSS proposed to make its US affiliate, ADSI, the counterparty to the written agreement and, by signing the written agreement, Mercury apparently agreed with that approach.  (*See* Am. Compl. ¶ 22.)  On this basis, Mercury contends that ADSS should be bound by the terms of the written agreement (specifically, the payment terms) even though ADSS is not technically named as a party.  (*See id.* ¶¶ 24-25.)  If ADSS is to be bound by the payment terms

---

[2] Airbus Defense and Space, Inc. has changed its name to Airbus U.S. Space & Defense, Inc.

of the written agreement, then Mercury equally should be bound by the arbitration clause in the written agreement.

Mercury also notes that the written agreement was signed *after* some of the services had already been performed. (Opp. 8.) The timing of the written agreement makes no difference. Regardless of when it was prepared or signed, Mercury has alleged that the written agreement memorializes the terms of the agreement between Mercury and ADSS.

Mercury appears to be arguing that the written agreement attached as Exhibit 1 should be viewed as a legal nullity, and that this action involves only a verbal agreement between Mercury and ADSS. As outlined above, that position would be inconsistent with the facts alleged in the Amended Complaint. It also would run afoul of the statute of frauds. Under New York law, an oral agreement to be performed over more than one year is unenforceable. *See* N.Y. GEN. OBLIG. LAW § 5-701.[3] In this case, the Amended Complaint alleges services performed by Mercury from April 2013 through August 2014, when Mercury "ceased work" for nonpayment of its fees. (Am. Compl. ¶¶ 10, 28.) Thus, if Mercury were right that the only agreement in this case is a verbal agreement, the statute of frauds would bar Mercury's breach of contract claim.

Finally, Mercury laments that it would be left "without any forum" if this action is dismissed. (Opp. 9.) Nothing could be further from the truth. Based on the plain language of the written agreement, Mercury is entitled to commence an arbitration against ADSI in Washington, DC under the rules of the International Chamber of Commerce. Mercury also could bring an arbitration claim against ADSS relying on the same argument advanced here that the written agreement with ADSI memorializes an agreement with ADSS. ADSS and ADSI each

---

[3] The same is true under Delaware law, which is the law governing the written agreement. *See* DEL. CODE ANN. tit. 6, § 2714.

would have meritorious defenses in such an arbitration, but there can be no doubt that arbitration is available to Mercury as a forum for this dispute.

## Conclusion

For all the foregoing reasons, this action should be dismissed with prejudice.

Dated: February 6, 2020
      New York, New York

Respectfully submitted,

  s/ Jeff E. Butler
Jeff E. Butler
Michael Lightfoot
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Tel: 212-878-8000
Fax: 212-878-8375

*Attorneys for Airbus Defence and Space, S.A.U.*