UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERCURY PUBLIC AFFAIRS LLC, | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED:___08/21/2020___ |

MERCURY PUBLIC AFFAIRS LLC,

                 Plaintiff,

      -against-

AIRBUS DEFENCE AND SPACE, S.A.U.
f/k/a Airbus Military,

                Defendant.

1:19-cv-7518-MKV

OPINION AND ORDER DENYING
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

      Defendant Airbus Defence and Space, S.A.U. ("ADSS") filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and Section 2 of the Federal Arbitration Act (9 U.S.C. § 2).  (Def.'s Mot. Dismiss [ECF No. 25]; Def.'s Mem. Supp. Mot. Dismiss [ECF No. 26] [hereinafter "Def.'s Br."]).  Plaintiff Mercury Public Affairs LLC ("Mercury") timely filed an opposition and submitted an affidavit in support of its jurisdictional allegations.  (Pl.'s Mem. Opp. Mot. Dismiss [ECF No. 27] [hereinafter "Pl.'s Opp."]; Pl.'s Aff. Morris Reid [ECF No. 27-1] [hereinafter "Reid Aff."].)  Defendant filed a reply, but at no point did it submit any affidavits or other evidence speaking to personal jurisdiction.  (Def.'s Reply Mem. Supp. Mot. Dismiss [ECF No. 28] [hereinafter "Def.'s Reply"].)  For the reasons discussed below, Defendant's Motion is DENIED.

## BACKGROUND

### A.  Factual Background

      Mercury, a Delaware LLC with its principal place of business in New York, provides consulting services for government and foreign affairs matters.  (Am. Compl. ¶¶ 2, 8 [ECF No. 22].)  Defendant ADSS is a Spanish Corporation with its principal place of business in Spain.  (Am. Compl. ¶ 7.)  In April 2013, Mercury was hired by ADSS and its affiliate, nonparty Airbus Defense and Space, Inc.

("ADSI")[1] to provide consulting service to ADSS in connection with its efforts to sell aircraft to the United Nations and certain African nations. (Am. Compl. ¶¶ 10–12.) Mercury alleges that, from April 2013 to June 2014, it performed services according to a verbal agreement with ADSS, pursuant to which Mercury would be paid $10,125.00 per month for consulting work. (Am. Compl. ¶¶ 10–14.) This work involved the facilitation of multiple meetings with foreign officials, much of which was performed out of Mercury's New York City office, which it refers to as its "headquarters." (Am. Compl. ¶ 17.) In addition, Mercury alleges that representatives of ADSS attended some of those meetings, which took place both at the United Nations headquarters in New York City and in the surrounding New York City environs not part of the U.N. complex. (Am. Compl. ¶ 16; Reid Aff. ¶¶ 2–4.)

According to the Amended Complaint, in June 2014, ADSS sent Mercury an unsigned contract that memorialized the previously agreed upon payment terms. (Am. Compl. ¶ 21.) The contract, attached to the Amended Complaint as Exhibit 1, designated ADSI (rather than ADSS) as counterparty to Mercury, purportedly because internal Airbus procedure dictated that since Mercury is a U.S. company, it needed to be retained by a U.S. division of Airbus. (Am. Compl. ¶ 22.) Mercury claims that this was the only contact it had with ADSI. (Am. Compl. ¶ 23.) Mercury made revisions to the draft contract, signed it, and returned it to ADSI. (Am. Compl. ¶ 26.) However, neither ADSI nor ADSS ever executed the revised contract. (Am. Compl. ¶ 27.) This partially executed contract, which ADSS itself refers to as a "draft contract," contains an arbitration provision that ADSS now seeks to enforce. (Def.'s Br. 2.)

In August 2014, having received no payments from ADSS or ADSI, Mercury ceased performing its work. (Am. Compl. ¶ 28.) In November 2015, ADSS allegedly offered Mercury a

---

[1] ADSI, a Delaware corporation with its principal place of business in Virginia, was originally named as a defendant in this action alongside ADSS. (Compl. ¶ 4 [ECF No. 1].) When both defendants moved to dismiss for lack of diversity jurisdiction (Defs.' Mot. Dismiss [ECF No. 14]), Mercury amended its complaint to drop ADSI as a party (*see* Am. Compl.), thereby mooting the original Motion to Dismiss.

"Settlement Proposal" of $171,533.23 in satisfaction of its obligations for the work performed by Mercury.  (Am. Compl. ¶ 34; *see also* Am. Compl. Ex. 3.)  While Mercury claims it accepted the offer, no payment has been forthcoming.  (Am. Compl. ¶¶ 35–38.)

### B.  Procedural Background

Plaintiff asserts that the Court has specific jurisdiction over ADSS on the basis that ADSS transacted business in New York by contracting with Mercury, a New York-based company, for consulting services to be performed out of Mercury's New York office and by attending meetings in New York.  (Pl.'s Opp. 3–6; *see also* Am. Compl. ¶¶ 10–18.)  Plaintiff further asserts that its claim arises directly from that business.  (Pl.'s Opp. 6–7.)  Defendant moves to dismiss, arguing that the Amended Complaint fails to allege minimum contacts between ADSS and the State of New York sufficient to meet the criteria of New York's long-arm statute (N.Y. C.P.L.R. § 302) or constitutional due process requirements.  (Def.'s Br. 4–7.)  In support of its jurisdictional attack, Defendant proffers no evidence either with its moving papers or on reply.  Plaintiff, on the other hand, submitted with its opposition brief the jurisdictional affidavit of Morris Reid.  (*See* Reid Aff.)

## LEGAL STANDARD

### I.    Personal Jurisdiction

Where a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), it is the plaintiff's obligation to demonstrate that the court has jurisdiction over the defendant.  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  The plaintiff is granted some leeway in meeting this burden.  To survive a motion to dismiss, the plaintiff need only make a *prima facie* showing that the defendant is subject to personal jurisdiction.  *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

The jurisdictional analysis is not limited to the allegations of the complaint.  The court may consider supplemental materials, including affidavits, provided by either party.  *See Cooke v.*

*United States*, 918 F.3d 77, 80 (2d Cir.), *cert. denied*, 139 S. Ct. 2748 (2019); *see also Petra Bank*, 989 F.2d at 79.[2]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *MacDermid*, 702 F.3d at 727 (citing *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir.1993)).  Furthermore, "where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *Petra Bank*, 989 F.2d at 79.

Personal jurisdiction requires a two-step analysis.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).  First, the Court must analyze whether the law of the state—here, New York's long-arm statute, N.Y. C.P.L.R. § 302—subjects the defendant to jurisdiction.  *Id.*  Second, the Court must evaluate whether the exercise of jurisdiction would comport with constitutional due process protections.  *Id.*; *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).

A party may be subject to personal jurisdiction under New York's long-arm statute if it transacts business within the state and the asserted claims arise from that transaction.  N.Y. C.P.L.R. § 302(a)(1); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).  The determination of whether a party has transacted business in New York is ultimately based on the totality of the circumstances.  *Agency Rent A Car*, 98 F.3d at 29.

---

[2] Defendant's assertion that affidavits are appropriate only in determining subject matter jurisdiction and not personal jurisdiction (Def.'s Reply 2 n.1) is entirely unsupported and without merit.  Even a cursory review of case law reveals myriad examples to the contrary. *See, e.g.*, *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 728 (2d Cir. 2012) (assuming the truth of Plaintiff's affidavit in opposition to Defendant's Motion to Dismiss for lack *of personal jurisdiction*).

The Second Circuit has outlined a series of four nonexclusive factors drawn from state case law that often bear on this analysis:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car*, 98 F.3d at 29).  Even a single contact can be sufficient to establish jurisdiction, particularly where it is a purposeful action by the defendant.  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).  For a claim to be said to "arise from" that contact, courts require a "substantial nexus between the business transacted and the cause of action sued upon."  *Agency Rent A Car*, 98 F.3d at 31.

The exercise of jurisdiction must also comport with constitutional due process requirements that the defendant have certain "minimum contacts" with the forum state and that the suit "not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 317 (1945) (internal quotation marks omitted).  There are, of course, two types of personal jurisdiction, general and specific.  *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017); *see also Daimler AG*, 571 U.S. at 127; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Int'l Shoe*, 326 U.S. at 318 (1945).  This case implicates the latter.  *Daimler AG*, 571 U.S. at 128 (internal quotation marks and alteration omitted) ("Since *International Shoe*, specific jurisdiction has become the centerpiece of modern jurisdiction theory, while general jurisdiction has played a reduced role." (quoting *Goodyear*, 564 U.S. at 925)).  As the Supreme Court has frequently articulated over the

last decade, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks and alteration omitted); *see also, e.g., Bristol-Myers Squibb*, 137 S. Ct. at 1780–81.

It is worth noting that "the New York long-arm statute does not extend in all respects to the constitutional limits." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60–61 (2d Cir. 2012); *see also Cortlandt Racquet Club, Inc. v. Oy Saunatec, Ltd.*, 978 F. Supp. 520, 526 (S.D.N.Y. 1997). Accordingly, where the requirements of New York's long-arm statute have been met, the "minimum contacts" and "reasonableness" requirements of due process often have been met as well. *See Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015) (quoting *Licci ex rel. Licci*, 673 F.3d at 60–61).

## II.    Arbitration Agreement

Faced with a valid, applicable arbitration agreement, the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). But whether an agreement to arbitrate exists and whether the dispute falls within the scope of that agreement are "matter[s] for judicial decision." *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Flair Builders, Inc.*, 406 U.S. 487, 491 (1972); *see also Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 1117 (2020). The existence of an agreement to arbitrate is a question of state contract law. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017).

## DISCUSSION

### I.     Personal Jurisdiction

In the absence of any affidavit from Defendant in connection with its motion, the Court will, as it must, accept as true the factual allegations of the Amended Complaint and the Reid Affidavit.  *See MacDermid*, 702 F.3d at 728 ("Because [Defendant's] motion to dismiss was decided without a [jurisdictional] hearing and because [Defendant] submitted no affidavit testimony with the motion, the facts asserted in [Plaintiff's] complaint and affidavit in opposition to [Defendant's] motion are assumed to be true." (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 56–57 (2d Cir. 1985))).

ADSS retained Mercury, a company headquartered in New York (Am. Compl. ¶ 2; Def.'s Br. 1) specifically "to obtain assistance . . . in selling military transport aircraft to foreign governments and the UN" (Def.'s Reply 2).  Substantial work in connection with this consulting arrangement was performed out of Mercury's New York office (Am. Compl. ¶¶ 17–18).  ADSS suggests in its briefing that Mercury is actually headquartered in Washington, D.C., because a Washington address was listed as the registered address of Mercury on the contract with ADSI, which ADSS had drafted.  (Def.'s Br. 6.)  It also points out that the same contract was signed by Mercury in Tampa, Florida.  (Def.'s Br. 6.)  Notwithstanding the arguments by Defendant, at this stage, given that doubts are construed in favor of the plaintiff, the Court finds that the registered address and the location of contract execution do not outweigh Mercury's allegation that it is headquartered in New York.

More importantly, representatives of ADSS visited New York City to attend meetings with Mercury employees at the United Nations and elsewhere in the City in connection with Mercury's consulting work and the potential sale of aircraft.  (Reid Aff. ¶ 3.)  This is quintessential transaction

of business and readily meets the requirements of the New York long-arm statute and constitutional

due process at the 12(b)(2) stage.

The relevant jurisdictional allegations make clear that the contract was to be performed in

New York, since that is where the consulting was to occur, and that ADSS representatives attended

meetings in New York in furtherance of the consulting agreement.  Specifically, the Amended

Complaint (Am. Compl. ¶¶ 15–16, 18) and the jurisdictional affidavit filed as an exhibit to

Mercury's opposition brief (Reid Aff. ¶¶ 2–4) allege that Defendant's representatives "visited New

York for the purpose of meeting with parties to the contract regarding the relationship." *Sunward

Elecs.*, 362 F.3d at 22 (quoting *Agency Rent A Car*, 98 F.3d at 29).  Plaintiff would arrange meetings

with government officials in connection with potential sales of aircraft, usually at the United Nations

headquarters in New York City.  (Am. Compl. ¶¶ 14–15; Reid Aff. ¶ 3.)  Representatives of ADSS

attended those meetings alongside Mercury employees.  (Reid Aff. ¶ 3.)  Representatives of Mercury

and ADSS would also meet outside the United Nations complex, often at the W Hotel on Lexington

Avenue in New York City, to discuss the U.N. meetings.  (Reid Aff. ¶ 3.)  The topic of discussion at all

of these meetings was the sale of Airbus aircraft.  (Reid Aff. ¶ 4.)  These visits are undoubtedly of

jurisdictional significance as purposeful activity in the forum state that is closely tied to the present

controversy and support the finding that ADSS transacted business in New York within the meaning

of New York's long arm statute.  *See Sunward Elecs.*, 362 F.3d at 23 (finding that Defendants

transacted business in New York where they "maintained a continuous and on-going commercial

relationship with Plaintiff, a New York business," and "traveled to New York on two occasions to

attend . . . training programs"); *see also O'Mahoney v. Susser*, 531 F. App'x 39, 42 (2d Cir. 2013)

(summary order) (finding personal jurisdiction based on defendant's "initiation of a transaction

aimed at securing money from New York, his meeting in New York with the lender and discussion

of final details regarding the [promissory] Note, and his transmittal of moneys to New York to satisfy the Note's obligations").

Furthermore, these meetings, which, given their U.N. component, could only have been held in New York City, reasonably suggest that ADSS knew that performance under the contract would involve substantial work conducted out of Mercury's New York office. *See Unlimited Care, Inc. v. Visiting Nurse Ass'n of E. Mass., Inc.*, 42 F. Supp. 2d 327, 331 (S.D.N.Y. 1999) (emphasizing relevance of whether contract is to be performed in New York (citing *Agency Rent A Car*, 98 F.3d at 29)). The Court need not wade into the jurisdictional quagmire of the U.N.'s physical headquarters. Even if actions taken at the U.N. are excluded from the jurisdictional analysis, ADSS's retention of Mercury, a citizen of New York, to provide consulting services and, in particular, its employees' attendance at meetings held in New York to obtain those services is sufficient to meet both the "transacting business" requirement of the New York long-arm statute and the constitutional "minimum contacts" test. *See Roxx Allison Ltd. v. Jewelers Inc.*, 385 F. Supp. 3d 377, 383 (S.D.N.Y. 2019) ("'By purposefully creating a continuous relationship with a New York corporation and by maintaining constant communications with it,' a defendant avails himself or herself 'of the benefits and privileges of transacting business in New York and is therefore subject to jurisdiction under N.Y. C.P.L.R. § 302(a)(1).'" (quoting *House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 167 (S.D.N.Y. 2010))); *Fischbarg v. Doucet*, 9 N.Y.3d 375, 382–83, 849 N.Y.S.2d 501, 507, 880 N.E.2d 22, 28 (2007) (finding long-arm jurisdiction given defendants' "substantial ongoing professional commitment between themselves and plaintiff"); *see also Chatwal Hotels & Resorts*, 90 F. Supp. 3d at 108 ("Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonable requirements of due process have similarly been

met.").  Finally, it is clear, and indeed Defendant does not dispute, that if ADSS transacted business in New York, that business has a substantial nexus to the present suit.

ADSS's assertion that it did not intend to sell jets to New York residents misses the point and is not relevant to the jurisdictional analysis.  Mercury, the New York citizen with whom ADSS contracted, is not in the business of buying or selling jets.  Rather, it provides consulting services to entities such as ADSS that, in this particular instance, sell jets.  The "transaction" subjecting Defendant to jurisdiction is its entry into a contract for consulting services by Mercury, a New York-based company, and, in particular, meeting with Mercury in New York in connection with those services.  The operative business transaction is the contract for consulting services, not the sale of any aviation products.

On the record before it, the Court finds that, "based on the totality of the circumstances," *Sunward Elecs.*, 362 F.3d at 23 (quoting *Agency Rent A Car*, 98 F.3d at 29), Plaintiff has met its burden and provided sufficient evidence that ADSS transacted business in New York.  The two *Sunward* factors applicable here support a finding of personal jurisdiction over ADSS.  Specifically, ADSS maintained "an on-going contractual relationship with a New York corporation" and, "after executing a contract with a New York business, . . . visited New York for the purpose of meeting with parties to the contract regarding the relationship."  *Id.* (quoting *Agency Rent A Car*, 98 F.3d at 29).  Having contracted for consulting services from a New York company and come to New York to consult under that agreement, ADSS should have "reasonably anticipate[d] being haled into court" in New York in connection with this contact if it failed to pay for services rendered entirely in New York.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *see Bristol-*

*Myers Squibb*, 137 S. Ct. at 1780–81; *Goodyear*, 564 U.S. at 919.  Accordingly, Mercury has made a *prima facie* showing that ADSS is subject to personal jurisdiction in New York.

## II.    The Alleged Arbitration Agreement

Defendant's argument for dismissal based on a purported arbitration agreement is equally unavailing.  There are two potential contracts at issue in the Amended Complaint: the alleged verbal agreement between Mercury and ADSS and the attached, but not fully executed, written agreement between Mercury and ADSI (Am. Compl., Ex. 1), which ADSS refers to in its motion as a "draft agreement" (Def.'s Br. 2).  The parties appear to agree that the former if it exists would be governed by New York law, while the latter if it is an enforceable contract would be governed by Delaware law by the express terms of its choice of law provision.  ADSS seeks to merge the two "agreements" by claiming, without any citations to case law, that the alleged oral agreement with ADSS and the unexecuted, draft contract with ADSI "are a single, integrated agreement." (Def.'s Reply 5.)  This argument is unpersuasive.  That Mercury may have interacted with two subsidiaries of Airbus with respect to the same consulting project does not obviate their corporate separateness or render their agreements "one and the same."  (Def.'s Reply 5.)

Significantly, the purported arbitration agreement is contained only in the proposed written agreement sent to Mercury by ADSI.  A revised draft was returned by Mercury but never signed by ADSS.  There is therefore a fundamental issue of whether what ADSS itself calls "a draft" contract is enforceable under Delaware law by ADSI.  But the Court need not resolve this question because that purported contract was, by its terms, to be between Mercury and ADSI, which is no longer a party to this case.  (*See* Compl. Ex. 1.)  ADSS was not listed as a party to that agreement and has not alleged any basis to enforce the arbitration clause contained therein.  *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430 (Del. Ch. 2007) (finding nonsignatory

not bound by arbitration clause unless conferred with signatory status under common law); *see also Waldron v. Goddess*, 61 N.Y.2d 181, 185, 473 N.Y.S.2d 136, 138, 461 N.E.2d 273, 275 (1984) (finding that nothing in the contract extended the right to compel arbitration to a nonparty).

ADSS has proffered no evidence of an arbitration agreement between Mercury and ADSS. New York law is clear that, while an arbitration agreement need not be in writing, it must still be "clear, explicit and unequivocal . . . and must not depend on implication or subtlety." *Waldron*, 61 N.Y.2d at 183–84, 473 N.Y.S.2d at 137, 461 N.E.2d at 274 (collecting cases). On the limited record before it at this motion to dismiss stage, the Court cannot find "clear, explicit and unequivocal" evidence that Mercury had agreed to arbitrate with ADSS. *Id.*; *see also Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 567 (S.D.N.Y. 2013) ("It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to arbitrate issues that a party has not agreed to arbitrate.").

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint for lack of personal jurisdiction and under the Federal Arbitration Act (ECF No. 25) is DENIED. The Defendant is directed to file an answer on or before September 7, 2020. The Clerk of the Court is respectfully requested to close the docket entry at ECF No. 25.

**SO ORDERED.**

**Date:  August 21, 2020**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**